STATE of Missouri, Respondent,

v.

Cornell T. BREWSTER, Appellant.

No. KCD 26909.

Missouri Court of Appeals, Kansas City District.

March 31, 1975.

Motion for Rehearing and/or Transfer Denied May 6, 1975.

Kenneth K. Simon, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Dan Summers, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

WASSERSTROM, Presiding Judge.

Defendant appeals from a conviction of first degree murder. He assigns four points of error, none of which is sufficient to warrant disturbance of the conviction.

## I.

Defendant's first point on appeal is that there was no evidence of deliberation sufficient to sustain a charge of murder in the first degree. This calls for a summary of the facts. In making this review, the well established rule requires that the facts in evidence and all favorable inferences reasonably to be drawn must be considered

in the light most favorable to the State. State v. Wing, 455 S.W.2d 457 (Mo.1970); State v. Rogers, 380 S.W.2d 398 (Mo. 1964).

This tragic episode had its origin in a fight over a bet on a game of pool between defendant and Floyd Elmore. Defendant prevailed in the fight, but apparently aroused some strong animosity on the part of Floyd Elmore and his brothers.

On the night following that fight, the glass was broken out of the windshield and side door of defendant's automobile. Officer Fiene discovered the broken glass, notified the defendant and offered to make out a report for defendant so that he could take it up with his insurance company. Defendant responded, "Never mind . . . I known who done it . . . just forget it; I'll take care of it myself."

The next day defendant accosted on the street Evelyn Elmore, who was a sister-in-law to Floyd and his brother Freddie, and stated to her: "You tell Freddie to either fix my windshield by this weekend or I'll kill him."

That night defendant and Freddie Elmore had an encounter on a street in front of the bowling alley. After some preliminaries, the situation developed to where Freddie got out of his car on the driver's side and started coming around the front of the car toward defendant who was standing on the sidewalk. When Freddie got to about the point of the headlights of his car, defendant drew a gun and cocked it. Freddie then turned around and started in the opposite direction. Defendant came off the sidewalk and started toward Freddie, who then started running. At that point defendant fired a shot. As Freddie continued to run, defendant fired two more shots. Freddie fell to the ground and tried to crawl under the gas tank of an automobile. Defendant followed and as Freddie lay on the ground, face down, defendant fired still a fourth shot into his back.

■ This evidence was fully adequate from which the jury could infer deliberation on the part of defendant and that he acted in cool blood. From the comment which defendant made to the deceased's sister-in-law on the afternoon of the shooting, it was fairly inferable that defendant was thinking in terms of killing the deceased at that early point. Defendant now argues that this evidence is undependable since it came from a member of the Elmore family. However, that merely went to the weight of the evidence, and whether or not the sister-in-law was to be believed constituted a classic jury question.

■ Moreover, even if that conversation be disregarded and only the events immediately connected with the shooting be considered, the State's evidence showed that Freddie Elmore retreated, that defendant pursued him, and that even after the deceased was prone on the ground, face down, defendant fired a final bullet into his back. This was amply sufficient, wholly aside from the afternoon conversation with Evelyn Elmore, to show deliberation. State v. Davis, 400 S.W.2d 141, 146 (Mo. 1966); State v. Cheek, 413 S.W.2d 231 (Mo.1967).

II.

■ Defendant next complains of the introduction into evidence of a picture of the deceased's nude body. The objection made at trial was, "We object to the gruesome nature of the exhibit; that is my objection, I'll hold to that." However, immediately prior to that quoted statement, defense counsel had also made mention of the fact that the photograph was merely cumulative of oral testimony; and on this appeal, he makes a still further contention that the photograph was not relevant to any issue in the case. For the sake of completeness, all three of these contentions will be considered.

The photograph was plainly relevant to show the location of the bullet wounds

with point of entry in deceased's back, so as to support the State's position that defendant had not acted in self-defense and that the shooting was deliberate. The fact that this photographic proof was corroborative of oral testimony to the same effect and that the photograph may have added some gruesom effect does not serve to make the photograph inadmissible. State v. Crow, 486 S.W.2d 248, 255 (Mo.1972); State v. Wallace, 504 S.W.2d 67, 72 (Mo. 1973); State v. Davis, 515 S.W.2d 181 (Mo.App.1974).

### III.

Defendant next complains that the trial court failed to give a cautionary instruction specifically informing the jury of its obligation to weigh and evaluate the evidence. In his motion for new trial, defendant's complaint along this line was confined to the contention that the trial court should have given on its own motion MAI 2.01 and 2.02. On appeal, defendant expands the scope of his argument by also referring to MAI-CR 1.02, and he also argues that Instruction No. 1 which was given could have misled the jury with respect to its obligation to weigh and evaluate the evidence. Even though the latter two arguments have not been properly preserved, nevertheless, all phases of defendant's argument in this court will be considered as a matter of grace.

■ With respect to MAI 2.01 and 2.02, very little need be said. Those instructions are intended for civil cases and are inapplicable to criminal procedure. State v. Bohlen, 487 S.W.2d 543, 544 (Mo.1972); State v. Howard, 486 S.W.2d 660, 662 (Mo.App.1972).

■ With respect to MAI-CR 1.02, the approved criminal instructions did not become effective until January 1, 1974. The trial in this case occurred in June, 1973. Accordingly, MAI-CR 1.02 was not required and its lack cannot constitute error.

■ Turning to Instruction No. 1, that was the verdict directing instruction on murder in the first degree. Defendant objects to the second paragraph of that instruction which reads as follows:

"It is the duty of the Court to instruct you on all questions of law arising in this case, and it is your duty to receive such instructions as the law of the case, and to find the defendant guilty or not guilty, according to the law as declared by the Court, and the evidence as you received it under the directions of the Court."

Defendant argues that this paragraph "could have misled the jury into a passive measuring of the quantity of evidence rather than an active qualitative analysis of the evidence." The argument has no substance. The same Instruction No. 1 also told the jury that they could find the defendant guilty of murder in the first degree only if they believed and found from the evidence all of the specified elements "beyond all reasonable doubt." This informed the jury of the heavy burden of their duty, the performance of which necessarily involved "an active qualitative analysis of the evidence."

■ Moreover, a further cautionary instruction to the jury on the nature of their duty would have related to a collateral matter and was not required since not requested. State v. Wing, 455 S.W.2d 457, 464 (Mo.1970).

### IV.

■ Finally, defendant objects to the manslaughter instruction given by the court on the ground that it did not require a finding of either an intentional killing or culpable negligence. The State argues (1) that any error in the manslaughter instruction is nonprejudicial because defendant was actually convicted of murder in the first degree; and (2) that in any event there was no error in the manslaughter in-

struction. Because the State's second and more basic argument is clearly sound, it is unnecessary to reach the question whether the instruction would have been prejudicial, if erroneous.

Instruction No. 3, being the verdict director on manslaughter, told the jury that if it did not find defendant guilty of murder in the first or second degree, then it must consider manslaughter; and if it found beyond a reasonable doubt that defendant caused the death of Freddie Elmore by shooting, then it should find defendant guilty of manslaughter, unless it believed that defendant was not guilty by reason of self-defense as defined in a separate instruction. This Instruction No. 3 is virtually identical to the present MAI-CR 6.08. That identity would suffice in itself for the approval of the instruction given here. State v. Yeokum, 516 S.W.2d 535, 536–537 (Mo.App.1974).

 Moreover, there is perfectly good reason why a manslaughter instruction need not specifically require a finding of intentional killing or culpable negligence. This results principally from the manner in which manslaughter is defined under RSMo § 559.070:

> "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter."

It has been aptly held that under this statute, manslaughter has become a "residual offense," and encompasses every killing which is neither first nor second degree murder nor excusable or justifiable homicide. State v. Ryan, 492 S.W.2d 116, 122 (Mo.App.1973). Therefore, an instruction on manslaughter is sufficient if it excludes first and second degree murder and (where necessary under the evidence) justifiable and excusable homicide, and follows the language of the statute. State v. Clark, 412 S.W.2d 493, 496 (Mo.1967).

Affirmed.

All concur.