STATE of Missouri, Plaintiff-Respondent,

v.

Elbert CLIFTON, Defendant-Appellant.

No. 37022.

Missouri Court of Appeals, St. Louis District.

Feb. 22, 1977.

Motion for Rehearing or Transfer Denied April 15, 1977.

Application to Transfer May 10, 1977.

---

Robert C. Babione, Public Defender, Cornelius T. Lane, Jr., Asst. Public Defender, St. Louis, for defendant-appellant.

Preston Dean, David L. Baylard, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Henry J. Fredericks, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PER CURIAM.

Appellant, Elbert Clifton, was found guilty by a jury in the Circuit Court of the City of St. Louis of Murder in the Second Degree, § 559.020 RSMo. 1969, but the jury could not agree on the sentence, and the trial court sentenced him to fifty years in the custody of the Missouri Department of Corrections. §§ 559.030 and 550.090(3) RSMo. 1969. He appeals.

No challenge is made to the sufficiency of the evidence to support the jury verdict.

Because of the refusal of the trial court to read to the jury panel, prior to the commencement of the voir dire examination, MAI–CR 1.02 we are compelled to reverse the defendant's conviction and remand the cause for a new trial.

Trial of this cause commenced in the Circuit Court of the City of St. Louis on March 24, 1975. Prior to the voir dire examination of the jury panel the trial judge addressed the panel with his version of what he deemed appropriate in lieu of MAI–CR 1.02. The defendant in his Motion for New Trial raised the point that "The Court committed prejudicial error by failing to read to the jury panel instruction number MAI–CR 1.02," and during the course of preparing the transcript on appeal, an insert was made which reads: "The proceedings typed starting on the bottom half of pg. 46, Re: Judge giving Ins. # 1.02, and ending on middle of page 46B were had at this time." An excerpt of the assistant circuit attorney's voir dire examination follows this and then, at page 42 of the transcript, the following appears:

"THE COURT: It is to be noted in the Defendant's Motion for New Trial that as ground number one, 'The Court committed prejudicial error in failing to read to the jury panel Instruction Number M.A.I. CR 1.02.' Defense counsel is correct. *This Court does not read 1.02, but makes the following remarks to the jury in each and every case which contains these same substances as 1.02.* The remarks that the Court gave in lieu of 1.02 is as follows:" (Emphasis supplied).

The remarks made in lieu of MAI–CR 1.02 are then reported in the transcript.

We need not extend the body of this opinion with the trial court's remarks. We have discerned, however, that there were several material and prejudicial omissions in the remarks of the trial court. They may be compared line by line in the appendix. We have carefully compared the oral remarks given by the trial court and MAI–CR 1.02 and conclude that a reversal and remand is required.

■ The State concedes that MAI–CR 1.02 is an instruction required to be given by the trial court in all criminal cases and that the omission or failure to read the instruction to the jury panel prior to voir dire examination constitutes error. Nevertheless, the State argues: 1) that the appellant has not preserved this point for review because he has not set forth in detail and with particularity the specific grounds of error in his Motion for New Trial and 2) that although the failure to read MAI–CR 1.02 constitutes error, its prejudicial effect must be judicially determined, Rule 20.-02(e), and that the defendant was not prejudiced because the prefatory remarks of the trial court adequately contained the substance of the matters covered in MAI–CR 1.02.

■ We disagree. The Motion for New Trial pointed out that this action of the trial court constituted "prejudicial error." In civil cases a deviation from an MAI pattern instruction which did not require modification constitutes error and the burden is on the proponent of the instruction so modified to establish the absence of prejudice. *Brown v. St. Louis Public Service Company,* 421 S.W.2d 255, 259[3] (Mo. banc 1967); *Ogle v. Terminal R. R. Ass'n of St. Louis,* 534 S.W.2d 809, 812 (Mo.App.1976). In *Crystal Tire Co. v. Home Service Oil Co.,* 525 S.W.2d 317, 321[4] (Mo. banc 1975) the failure to read pattern instruction MAI No. 2.02—"Facts Not Assumed"—immediately before the form of verdict instruction, was held to be error and presumptively prejudicial because it violated the Notes on Use to that instruction. In *Chapman v. Bradley,* 478 S.W.2d 873[1] (Mo.App.1972) the omission from MAI No. 2.01 of eleven words in paragraph 8 of the instruction referring to the right of the trial jury to consider the interest of the witness in the outcome of the suit, and the relation of the witness to the parties to the suit in considering the weight and value of the testimony of any witness was held to be "presumptively prejudicial unless it is made perfectly clear to us no prejudice could have resulted."

*McCory v. Knowles,* 478 S.W.2d 682, 685[5] (Mo.App.1972) also reached the same conclusion with respect to certain other omissions from MAI No. 2.01.

■ In civil cases a deviation from a pattern instruction constitutes error and the burden is on the proponent to establish the absence of prejudice. The failure of the trial court to read to the jury the mandatory instruction MAI–CR 1.02 is presumptively prejudicial.

In reaching this conclusion we are not unmindful of the decisions cited by the State in support of its argument that not every deviation from an approved pattern instruction constitutes prejudicial error and that the cases decided since the effective date of MAI–CR have announced the general proposition that instructions given by a trial court which deviate from the pattern instructions but which nonetheless adequately cover the substance of the matters contained in the approved instruction do not constitute prejudicial error. The State argues that the test to be applied is whether the erroneous instruction misled, confused or affected the jury to the defendant's prejudice. In support of this argument the State cites *State v. Billingsley,* 534 S.W.2d 484 (Mo.App.1975), *State v. Gaye,* 532 S.W.2d 783 (Mo.App.1975), *State v. Vernor,* 522 S.W.2d 312 (Mo.App.1975), *State v. Knox,* 529 S.W.2d 455 (Mo.App. 1975) and *State v. Witnah,* 493 S.W.2d 32 (Mo.App.1973).

Of the cases cited by the State only three involve an Instruction required by the provisions of Rule 20.02(a) to be read at any specific point in the instruction phase of the case. These are *State v. Vernor,* supra, *State v. Gaye,* supra, and *State v. Billingsley,* supra.

Both *Vernor* and *Gaye* held that the failure of the trial court to read to the jury MAI–CR 1.08 did not constitute prejudicial error where the jury was instructed in substantially the same terms as the approved pattern instruction. In *Vernor* the basis for this finding was that prior to the adoption of MAI–CR there was case law which held that where the trial court instructed the jury in all cases of felony, except in capital cases, at each recess or adjournment during the trial in substantial compliance with § 546.230 RSMo. 1969, V.A.M.S. the instruction was tolerated. The Court in Vernor recognized that the requirements of MAI–CR were more stringent than the former practice; nevertheless, toleration of the former practice was the basis for that opinion.

*Gaye* merely followed *Vernor* and cited it for authority in arriving at its decision that failure to follow the Notes on Use in MAI–CR was not prejudicial to the rights of the defendant.

*State v. Billingsley,* supra, involved whether the failure of the trial court to instruct in compliance with the Notes on Use applicable to MAI–CR 2.03 and 2.80 specifying the numerical order in which these instructions are to be given by the trial court in submitting the case to the jury. The Notes on Use specify that MAI–CR 2.03—"General Instructions"—is to be read to the jury as the first of the instructions given at the close of the case and immediately prior to the argument of counsel. The Notes on Use for MAI–CR 2.80—"Verdict Mechanics: Unanimity Required"—specify that this pattern instruction is to be read to the jury in every case immediately prior to the last instruction, MAI–CR 2.68—Argument of Counsel. The trial court in *Billingsley* disregarded these directions and instead read MAI–CR 2.03 as the number seven instruction rather than as the number three instruction and MAI–CR 2.80 as the number eight instruction rather than the number nine instruction as they should have been. Although the court noted the provisions of Rule 20.02(e) that violation of any applicable Note on Use constituted error and that case law establishes that any such error must be deemed prejudicial unless the contrary appears that the burden of proof to show non-prejudice was on the State, it concluded that the change of order in the giving of the instructions created no likelihood of confusion or mis-

leading of the jury under "the particular circumstances here" and therefore the error was nonprejudicial.

*Billingsley* distinguished the holding in *Crystal Tire Co. v. Home Service Oil Co.,* supra, on the basis that in *Crystal Tire Co.* there were a number of involved claims and cross-claims involving different theories of recovery wherein twenty-three instructions were required to present all of the diverse issues to the jury whereas in *Billingsley* there was but one defendant involved and only a single offense; that the factual problem for the jury was relatively simple with the trial completed in one day; and that the jury was presented with but a single, narrow, sharply defined issue, i. e. to choose between two contradictory witnesses. By reason of these distinctions the court in *Billingsley* held *Crystal Tire Co.* was not controlling.

Both *State v. Knox,* supra, and *State v. Witnah,* supra, involved the question of error in the giving of converse instructions in contravention of MAI–CR 2.04 and, except for the general principle that our appellate courts have tolerated violations of MAI–CR and found nonprejudicial error, are no authority for the resolution of the issue in this case.

Neither party to this appeal has favored us with any authority on the point presented; however, our research has brought us to *State v. Thomas,* 526 S.W.2d 393 (Mo. App.1975)—a case decided on August 4, 1975, while this appeal was pending—where the question presented was whether the trial court erred prejudicially "in failing to give to the jury MAI–CR 1.02, as mandatorily required by Rule 20.02 V.A.M.R." Because the appellant failed to furnish the Kansas City District with a transcript containing anything other than an entry that "(A jury was duly examined, selected and sworn by the Deputy Circuit Clerk.)" the court held that the appellant failed to show that he suffered prejudicial error. The court said, 1. c. 394[1]:

"It was appellant's duty to incorporate the portions of trial record relating to the examination and selection of the jury, so that this court would know whether there was a complete failure to give MAI–CR 1.02, or whether there was a material deviation in whatever was done in the examination and selection of the jury from the instruction. This is necessary for this court to determine the error, if any, and to judicially determine its prejudicial effect under Rule 20.02(e). There is no suggestion from appellant that whatever was done, or omitted to have been done, was prejudicial to his rights, or denied him a fair trial. Prejudice cannot exist in the vacuum of a mere alleged failure to give this instruction. Prejudice must arise from some act or misconduct in the trial which affected its outcome. A showing of any such matter is lacking and appellant's first point is overruled."

*Thomas* is distinguishable because there was a complete failure to present to the reviewing court any record upon which it could make a determination of the prejudice occasioned by the omission of MAI–CR 1.02.

■ We are aware of the duty of the appellant to bring to the appellate court a record on appeal to support his alleged trial errors which worked to prejudice him during the course of the trial, *Davis v. Long,* 521 S.W.2d 7, 8[3] (Mo.App.1975); however, if any error in the giving of instructions in a criminal case must be deemed to be prejudicial unless the contrary appears, as the court said in *State v. Billingsley,* supra, we conclude that an allegation that the trial court did not give a mandatory instruction in compliance with the Notes on Use in MAI–CR and the trial court admits in the record that in lieu of the mandated instruction it gave its own version of MAI–CR 1.02, the error is presumptively prejudicial.

■ The defendant has alleged in this court nine omissions from MAI–CR 1.02 in the instruction given by the trial court. Our search does not reveal that number, although we have found sufficient omissions to sustain the defendant's complaints.

MAI–CR instructions are the product of the tireless efforts of a Special Committee of the Missouri Bar appointed for the purpose of formulating pattern instructions for use in criminal cases followed by an interchange of ideas and redraftmanship in cooperation with the Supreme Court towards the end that there be fewer reversals of convictions by reason of faulty instructions and so that statewide uniformity in the reading of instructions to juries in criminal cases would be achieved. The particular instruction here, MAI–CR 1.02, is the product of thorough study by representatives of the circuit bench, prosecutors, defense counsel and law professors knowledgeable in the administration of criminal justice, adopted only after submission to many members of the Bar and consideration by both the Board of Governors of the Missouri Bar and the members of the Supreme Court. The Supreme Court mandated its reading to the jury by all trial judges of this State prior to the voir dire examination of the jury panel. We can conceive of no reason why these directions of the Supreme Court should not be followed by the trial courts of Missouri.

Judge McMillian of this court pointed out the danger of continued excursions from the approved pattern instructions in criminal cases by the trial courts of Missouri in his concurring opinion in *State v. Mills*, 521 S.W.2d 495 (Mo.App.1975), when he said at 1. c. 497:

"Where there are approved MAI–CR instructions applicable in a particular case which the appropriate party requests or the court decides to submit, such instructions should be given, without either additions or deletions, to the exclusion of any other on the same subject matter. While it is true that Order 20.02(e), Use of Instructions and Verdict Forms, P.

VIII, provides: 'Giving or failing to give an instruction . . . in violation of this Rule or any applicable Notes on Use shall constitute error, its prejudicial effect to be judicially determined,' *yet if this practice is encouraged by subjective judicial constructions the exceptions may well become better known than the rules themselves. In other words, if we, the judiciary, constantly give currency to this practice, the value and benefits to be derived from the adoption of pattern instructions and the time and efforts extended by our committee of the Missouri Bar on Criminal Pattern Instructions will both be lost."* (Emphasis supplied).

The appellate courts are deluged with appeals and could well do without the additional chore of examining those cases where error by reason of unnecessary deviations, modification or "subjective judicial constructions" of the approved pattern instructions is raised to ascertain whether prejudice resulted. We believe we are compelled by the Supreme Court Rules to insist on strict compliance with the Rule and the Notes on Use applicable to MAI–CR.

■ We have examined defendant's other two points, i. e. (1) that the trial court erred in failing to give an instruction on justifiable homicide, MAI–CR 2.40 and (2) in failing to incorporate the term "agitation" in MAI–CR 6.06—Murder Second Degree—and hold that under the evidence viewed most favorably for the defendant the trial court did not err as defendant contends and we rule both of these points against him.

Reversed and remanded for a new trial.

All Judges concur.

Appendix I to follow.

APPENDIX I.

| MAI–CR 1.02 | Trial Court's Paraphrase |
|---|---|
| 1. The trial of a case starts with the selection of a jury of qualified and impartial people. In order to obtain such a jury, all of you have been summoned as prospective jurors. | Ladies and gentlemen of the jury panel: you have been sent from the central jury room in the Civil Courts Building to Division 19 of the Circuit Court of the City of St. Louis which is one of the trial divisions of our court that handles criminal or felony matters.<br><br>Now, members of the jury panel, those of you who have served on juries previously know that at this stage of a lawsuit questions are asked of you testing your qualifications. |

—Does not mention that the jury must be impartial, which is the basic purpose of voir dire—leaves jury panel confused as to what the questions during voir dire will be attempting to ascertain and thus members of the panel may omit relevant facts in their answers on voir dire through uncertainty or confusion. (This error is amplified by later failure of trial court to ask whether any of the jury panel is familiar with counsel on either side).

| 2. The law requires that counsel for the state and counsel for the defendant each cross off a certain number of names from the list, leaving a jury of twelve . . . Those of you who are excused during the voir dire examination or at the end of it should not feel offended. You all are qualified to serve as jurors but some of you necessarily will be excused from serving in this particular case. | You are all qualified or you wouldn't be here. Nevertheless, these lawyers are entitled to know something about you to enable them to select twelve of your number who will try the issues in this case and sit as a jury. When these questions are asked of you, I ask that you speak out loud so that we can all hear you, particularly the court reporter here who must take down every word that is said. |

—Not as clear as MAI in conveying that this is not a "pass or fail" situation and that answers should thus not be given defensively but as fully as possible.

| 3. In order to assist the attorneys to perform this function and duty, it is necessary that you be asked various questions. The court may ask you some questions and counsel may ask you some questions. Your answers will assist the court in determining whether it should excuse you from serving in this case and will assist the attorneys in making their selection of the twelve of you who will be the jury and hear this case.<br><br>Thus, you will understand that the questions which are asked of you are not meant to pry into your personal affairs, but, rather, are necessary in the process of selecting a jury of twelve. | Now, I am going to ask you some questions and the lawyers will ask you some questions. It is not our intention to pry into your personal affairs. These questions are merely sought to determine something about you to enable the lawyers to make their selections. |

—Fails to mention that the court as well as counsel may make decisions on eliminations from the jury panel.

4. Since this is an important part of the trial, you are required to be sworn before questions are asked. You will, of course, listen carefully to all questions, and you must answer all of them under oath.

Take your time. Seach your memory before answering. Some of the questions may require you to recall experiences during your entire lifetime. If you do not understand the question, raise your hand and say so. If, later on, during your examination, you remember something which you failed to answer before or which would modify an answer you gave before, raise your hand and you will be asked about it. Your answers must not only be truthful but they must be full and complete.

Wholly omitted—very prejudicial in failing to impress upon the jury panel: 1) the importance of voir dire; 2) how carefully and fully each member of the panel should consider each question; and 3) that the panel is allowed and encouraged to ask questions when they are uncertain and to return to topics previously discussed in the voir dire proceeding if they suddenly remember relevant information.

5. The case which twelve of your number will try is one in which it is charged by the state that (on) (on or about) _____ in the (City) (County) of _____, State of Missouri, the defendant ( ), committed the offense of ( ).

6. The defendant denies the charge. Thus, an issue of fact has arisen which must be decided by a jury, subject to instructions concerning the law which the court will give to the jury. (One of the issues of fact is whether at the time of the offense charged, the defendant was suffering from a mental condition, which, if found by the jury to have existed, would have certain consequences in law about which the jury will be told at the close of all the evidence in the case. The defendant is entitled to raise this issue without admitting either that the offense charged against him was committed or that he is guilty of it.)

The particular case that has been assigned here for trial at this time is the case of State of Missouri versus Elbert Clifton. The defendant, Elbert Clifton, has been charged by Grand Jury Indictment with the crime of murder in the Second Degree.

To this charge he pleads not guilty and thereby creating a question of fact for a jury to determine.

—Less clear than MAI—and omits the "mental condition" example of an issue of fact— and that jury decision is subject to instructions concerning the law.

Trial Court's Paraphrase—Continued

7. The state is represented here by Mr. _____. Do any of you know him personally or have you had any business dealings with him?

The defendant is represented here by Mr. _____ of the law firm of _____ and _____. Do any of you know him personally or have you had any business dealings with him or his law firm?

In this case the State of Missouri will be represented by Mr. Henry J. Fredericks who sits now at counsel table. Mr. Fredericks is an Assistant Circuit Attorney on the staff of Brendan Ryan, the Circuit Attorney of the City of St. Louis. Seated across at the other table is Mr. Cornelius Lane. Mr. Lane is a special assistant on the staff of the Public Defender's office in this city and next to Mr. Lane is the defendant, Elbert Clifton.

Failed to inquire whether any of the jury panel have any connections with counsel for either side. Also, along with the omission of the word "impartial" in paragraph #1 above, this oversight marks a failure at any point in this instruction to convey to the jury panel that voir dire is basically intended to reduce the jury panel to the twelve least partial members, and that any personal connection to any aspect of the trial procedure should be brought out by panel members during voir dire.

8. Those twelve of you selected as the jury will be instructed later that you are not to discuss this case with anyone or among yourselves until the case is concluded and you are sent to your jury room with written instructions upon the law of the case to deliberate upon your verdict. However, you should be told now that the attorneys representing the state and the defendant are officers of this court and as such are under a duty not to do anything which may even seem improper. Therefore, at recesses and adjournments they will avoid saying anything to the jury besides "Good morning" or "Good afternoon." In doing that they do not mean to be unfriendly but are simply doing their best to avoid even an appearance, which might be misunderstood, that they or you are doing anything improper.

The same applies to witnesses and to the defendant. They have been or will be instructed to avoid all contacts with the jury, even to talk about matters wholly unrelated to this case.

Wholly omitted.

## APPENDIX II.

### CASES DISCUSSING AND RULING ON MODIFICATIONS OR DEVIATIONS FROM MAI–CR

SUPREME COURT:
State v. Abram, 537 S.W.2d 408 (June 14, 1976)

COURT OF APPEALS:

State v. Grothe, 540 S.W.2d 221 (S.L. Aug. 10, 1976) (MAI–CR 10.18)
State v. Brewer, 540 S.W.2d 229 (S.L. Aug. 10, 1976) (MAI–CR 18.10)
State v. Carter, 541 S.W.2d 692 (S.L. July 20, 1976) (MAI–CR 7.22)
State v. Billingsley, 534 S.W.2d 484 (K.C. Dec. 31, 1975) (MAI–CR 2.03 & 2.08)
State v. Adams, 531 S.W.2d 763 (K.C. Dec. 8, 1975) (MAI–CR 2.12, 7.62)
State v. Gaye, 532 S.W.2d 783 (S.L. Nov. 25, 1975) (MAI–CR 1.08)
State v. Knox, 529 S.W.2d 455 (S.L. Sept. 16, 1975) (MAI–CR 7.62, 2.04)
State v. Thomas, 526 S.W.2d 893 (S.L. Aug. 5, 1975) (MAI–CR 7.04, 7.06)
State v. Thomas, 526 S.W.2d 393 (K.C. Aug. 4, 1975) (MAI–CR 1.02)
State v. Vernor, 522 S.W.2d 312 (S.L. April 15, 1975) (MAI–CR 1.08)
State v. Brewster, 525 S.W.2d 427 (K.C. March 31, 1975) (MAI–CR 1.02)
State v. Mills, 521 S.W.2d 495 (S.L. March 25, 1975) (MAI–CR 7.02)
State v. Fox, 521 S.W.2d 507 (SP. March 24, 1975) (MAI–CR 7.62)
State v. Alberts, 519 S.W.2d 562 (S.L. Feb. 11, 1975) (MAI–CR 7.70).