**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Lonnie Lee BARTON and Kelly Duane Copeland, Defendants-Appellants.**

**Nos. 13459, 13419.**

Missouri Court of Appeals,
Southern District,
Division Three.

April 27, 1984.

Motion for Rehearing or to Transfer to Supreme Court Denied May 17, 1984.

Application to Transfer Denied
June 19, 1984.

Bradshaw Smith, Van Buren, for plaintiff-respondent.

Daniel T. Moore, L. Joe Scott, Daniel T. Moore, Poplar Bluff, for defendants-appellants.

GREENE, Chief Judge.

Defendants, Lonnie Lee Barton and Kelly Duane Copeland, were separately charged with the class B misdemeanor of pursuing game with the aid of artificial light, while they were in a motor vehicle, and in possession of loaded firearms, in violation of § 252.040, RSMo 1978; Missouri Wildlife Code 3 C.S.R. 10–7.410(1)(B). The two men waived separate trials, and requested trial by jury, which was granted.

After hearing the evidence, the jury found the two men guilty and recommended a sentence of 10 days in the county jail plus a fine. The trial court sentenced Copeland and Barton to 10 days in jail and fined each of them $450. Both men appealed and their appeals are consolidated here for our review.

Copeland and Barton contend that the trial court erred 1) in failing to sustain their motions for judgment of acquittal filed at the close of all of the evidence because the state had not made a submissible case, and 2) by omitting portions of mandatory instruction MAI–CR2d 1.02 when that instruction was read to the jury.

In determining whether the evidence was sufficient to support the charge, we accept as true all evidence and all favorable inferences drawn therefrom that uphold the jury verdict, and disregard all evidence and inferences to the contrary. *State v. Parks*, 657 S.W.2d 402, 403 (Mo.App.1983).

Missouri Wildlife Code 3 C.S.R. 10–7.-410(1)(B), on which the charges were based, states that game mammals and furbearing animals, except raccoons or other furbearing animals when treed with the aid of dogs, may not be pursued with the aid of any artificial light. For the purposes of this subsection, the word "pursued" is defined as the act of trying to find, seek, or diligently search for game mammals or furbearing animals for the purpose of taking them.

Evidence introduced at trial that showed a violation of the regulation by both Barton and Copeland was that on the night of November 20, 1982, Jim Porkorney, a Missouri State Conservation Agent, accompanied by Doug Johnson, a Deputy Sheriff of Ripley County, was checking deer camps near the Carter/Ripley county line for possible violations of the wildlife code. While headed south on C Highway, Porkorney noticed a vehicle traveling at "what appeared to be a very slow rate of speed" that was behind him on the highway. The other vehicle turned east onto a gravel road in a remote area. Porkorney, knowing that the area was heavily populated with deer, was suspicious of the motives of the driver of the other vehicle. He turned off the lights of his pickup truck, turned around, and followed the other vehicle, which was a 1978 Scout motor vehicle owned and driven by Copeland.

When the Scout vehicle approached Barren Creek Valley, which was an open fields area, spotlights came on from the driver's

and passenger's side of the Scout, and swept the fields on both sides of the road. Porkorney "put my red light on" and pursued the other vehicle. "[T]he Scout that had been spotlighting, spun out and took off at a high rate of speed for a ways and then came to a stop." Copeland was in the driver's seat, while Barton was in the front passenger seat. There were two loaded rifles in the Scout, one lying on the dash, and the other in the seat next to Barton. The Scout also contained a computer type scanner with the frequency used by the conservation commission "locked in at 155.-320."

The evidence showed that the incident occurred the night before the last day of deer season, and that Copeland and Barton were deer hunters who had been unable to kill a deer during the season. The defense relied on by the two defendants was that they were looking for a squirrel dog lost by Copeland in the vicinity two days previously.

█ The facts in this case are very similar to those in State v. Parks, 657 S.W.2d 402 (Mo.App.1983), where convictions for "spotlighting" were affirmed. In this case, the manner in which the vehicle driven by Copeland was being driven, the way the spotlights were being used, the presence of two loaded rifles in the Scout, the fact that the frequency scanner was locked in on the conservation department frequency, and the remoteness of the area which contained a large deer population, plus the fact that Barton and Copeland, both deer hunters, had not been able to kill a deer by legitimate means, justifies the jury's conclusion that the two men were violating the regulation and statute as charged. The evidence of guilt was sufficient to sustain the convictions.

The remaining point relied on concerns claimed instructional error. While we have not been favored by having a copy of the complained of instruction included in the legal file, it appears from the transcript that in the reading by the court clerk of the 1983 revision of MAI–CR2d Instruction 1.02 to the panel of prospective jurors who were sworn for voir dire examination, a portion of that instruction was inadvertently left out. The omitted portion, which included MAI–CR2d 2.20 reads as follows:

"The fact that the defendant(s) (has)(have) been charged with (an offense)(offenses) is not evidence, and it creates no inference that any offense was committed or that (the)(either)(any) defendant is guilty.

(The)(Each) defendant is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt (that the defendant)(as to each defendant that he) is guilty.

If the evidence in this case leaves in your mind a reasonable doubt as to (the)(a) defendant's guilt (on any Count charged against him) you must return a verdict of 'Not Guilty' (as to that defendant)(on that Count).

Is there any of you who, if selected as a juror, could not, for any reason, follow that instruction? Do you know of any reasons why you would be unable to follow the other instructions of the court?

The attorneys representing the state and the defendant are officers of this court and as such are under a duty not to do anything which may even seem improper. Therefore, at recesses and adjournments they will avoid saying anything to the jury except, perhaps, something like 'Good morning' or 'Good afternoon.' In doing that they do not mean to be unfriendly but are simply doing their best to avoid even an appearance, which might be misunderstood, that they or you are doing anything improper.

The same applies to witnesses and to the defendant. They have been or will be instructed to avoid all contacts with the jury, even to talk about matters wholly unrelated to the case.

(Introduce the attorneys and ask such additional questions that the court deems appropriate.)

Counsel for the state will question you first and then counsel for the defendant may question you.

Counsel for the state may proceed."

The transcript indicates that the reason why the quoted portion was omitted from the reading of the instruction was that the trial judge had a vision problem and was unable to read the instructions to the jury, forcing him to rely on the court clerk to read them. Evidently the clerk, who was not the regular clerk of the trial judge, became confused and omitted the language in question. It was an innocent mistake. The omitted portion of MAI–CR2d 1.02, which was MAI–CR2d 2.20, was read to the jury that heard the case in its entirety, was among the instructions given to the jury to take to the jury room for use during their deliberations, and was available for the defense attorneys to use during their deliberations during closing argument.

While it is true, as defendants argue here, that failure to read MAI–CR2d 1.02 in its entirety to the jury panel prior to selection of the jury was presumptively prejudicial [*State v. Clifton*, 549 S.W.2d 891, 894 (Mo.App.1977)], not every omission from a MAI–CR instruction is prejudicially erroneous, as prejudicial effect must be judicially determined from all of the facts and circumstances, and in determining that effect, all instructions are to be construed together. *State v. Summerland*, 610 S.W.2d 392, 394 (Mo.App.1980).

When we consider the fact that the omitted portion of instruction MAI–CR2d 1.02 was read to the jury in its entirety before they retired to deliberate, we cannot say that prejudice resulted from inadvertently omitting the paragraph in question from the preliminary instruction. See *State v. Holt*, 592 S.W.2d 759, 776 (Mo. banc 1980), and *State v. Wilfong*, 438 S.W.2d 265, 266 (Mo.1969). The point is denied.

Judgment affirmed.

CROW, P.J., and HOGAN, MAUS and PREWITT, JJ., concur.