**CITY OF SMITHVILLE, Missouri, Respondent,**

v.

**Dannie SUMMERS, Appellant.**

**No. WD 35897.**

Missouri Court of Appeals, Western District.

May 7, 1985.

James R. Brown, Brown & Brown, Kansas City, for appellant.

Michael W. Manners, Paden, Welch, Martin, Albano & Graeff, Independence, for respondent.

Before KENNEDY, P.J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

A jury found the defendant Summers guilty of the breach of the City of Smithville ordinances against careless and imprudent driving and driving while intoxicated. The court assessed a fine of $500 in each case.

The appeal contends, among other grounds, that the trial put Summers again in jeopardy of liberty for the same offense in violation of constitutional right.[1]

The jury verdicts, convictions, and penalties were incidents of a second trial of the offenses in the circuit court. The first trial commenced on March 19, 1984. The jury was selected and sworn, but before any evidence was presented, the court declared a mistrial *ex mero motu*, and then reset the cause for trial on the next day. That hearing proceeded to the jury verdict, conviction and penalty now on appellate review. The court aborted the trial on the day before, *sua sponte* and without other initiative. There is no record which preserves that action, but counsel agree that the court was prompted by the failure to give MAI–CR 2d 1.02, an oral instruction required to be given to the prospective jurors prior to the voir dire examination of the panel. The defendant on the first trial, immediately *after* the oath was administered to the jury as selected, moved for discharge "for failure to use criminal procedure"[2] [presumably, for the failure to precede the voir dire of the panel by oral instruction MAI–CR 2d 1.02]. The court denied the motion, and entered the order of mistrial.

On this appeal, the defendant contends that there was no manifest necessity for the mistrial, nor does that action subserve the ends of justice, and thus the subsequent prosecution for the same offenses are interdicted by the double jeopardy principle.

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant against multiple punishments or successive prosecutions for the same offense. *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975). That principle expresses a constitutional policy of finality for the benefit of the defendant in a criminal proceeding. It manifests the willingness of our society to limit government to a single proceeding

---

1. The claim of double jeopardy rests on Mo. Const. Art. I, § 19, but the argument is expounded in terms of counterpart Amendment V to the United States Constitution. The terminology of each varies. The text of the Missouri version—cited by the defendant—reads: "nor shall any person be put again in jeopardy of life or liberty for the same offense, *after being once acquitted by a jury.*" [emphasis added] The text of the federal version reads simply: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

The provision of the Missouri Constitution expresses the common law guaranty against double jeopardy. *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977). The defendant articulates the claim of double jeopardy in terms of the Missouri Constitution, but exegetes the contention in terms of the federal authority and Constitution. There is no ready difference between the two expressions of that right, however. *State v. Richardson*, 460 S.W.2d 537, 38 (Mo. banc 1970). In any event, the Double Jeopardy Clause of the Fifth Amendment applies to the several states through the Due Process Clause of the Fourteenth Amendment [*Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)] and thus—if there is a variance—a defendant is entitled to the more inclusive principle.

2. The record entry entered by the court on March 19, 1984, recites the presence of the parties and counsel, commencement of the trial, the consolidation of the two charges, and then continues, in haec verba:

"Voir dire examination is conducted *the panel having been administered the oath as in civil causes.* The parties complete the selection of the jury and there remains to sit herein the following persons to-wit: [the names of the twelve jurors follow]. *Clerk administers oath of civil case to jury herein. Defendant makes oral motion that defendant be discharged for failure to use criminal procedure. Request is denied and court declares mistrial.* Hearing set for the 20th day of March, 1984 at 9:00 o'clock in the forenoon...." [emphases added]

Thus, the only court record contemporaneous with the mistrial event does not mention a neglect to instruct the jury panel by MAI–CR 2d 1.02 prior to voir dire examination and selection of the jurors. The only apparent motivation for the mistrial order was that "the oath as in civil causes" was administered first to the jury panel, and then to the twelve selected as the jury—procedures perceived by the court to be sufficiently irregular to induce the uninvited abortment of the trial. There is no intimation of the content of an "oath in a civil case," or why, when administered to a jury in a criminal case, it disables a verdict.

to vindicate its very vital interest in the enforcement of the criminal laws. *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). A criminal defendant owns "the valued right to have his trial completed by a particular tribunal." Thus, the declaration of a mistrial implicates that right. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *State v. Irving,* 559 S.W.2d 301, 306 (Mo.App.1977).

■ In a trial to the jury, jeopardy attaches—for purposes of the Double Jeopardy Clause—when the jury is empaneled and sworn. *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957). A declaration of mistrial, however, does not always incur the double jeopardy ban. A motion by the defendant for mistrial usually removes any barrier to reprosecution, even if made necessary by judicial or prosecutorial error. *United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). In a case where the court declares a mistrial without initiative or consent of the defendant, double jeopardy interposes against a retrial unless, all the circumstances considered, "there is manifest necessity for the act [of mistrial], or the ends of public justice would otherwise be defeated.... [It is a power] to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824); *Illinois v. Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). The valued right of a defendant to have the trial completed by a particular jury, therefore, gives way only when the ends of public justice would no longer be served by a continuation of the proceedings. Within that principle [*United States v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), l.c. 464, 93 S.Ct. 1070]:

A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. *If an error would make reversal on appeal a certainty, it would not serve "the ends of public justice" to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court.* [emphasis added]

■ These principles make clear that jeopardy attached when the jury to try defendant Summers was selected and sworn. The inquiry becomes, whether—all the circumstances considered—the subsequent declaration of mistrial by the court, without initiative or consent of the defendant, was a *manifest necessity* or compelled by the *ends of justice.* That is to say: whether the cause tried to a conclusion and conviction by the impaneled jury "would automatically be stripped of that success by an appellate court" because of the neglect of the court to give the panel oral instruction MAI–CR 2d 1.02. *Illinois v. Somerville,* supra, l.c. 464, 93 S.Ct. 1070. That determination, in turn, depends upon *the error or irregularity which prompted* the court to the uninvited declaration of mistrial.

Counsel offer the consensus that the mistrial was induced by the recognition by the court of the failure to give oral instruction MAI–CR 2d to the panel of prospective jurors prior to voir dire examination. The minutes entered by the judge of the March 19, 1984, proceedings—the only contemporaneous record of the mistrial event [*see* fn. 2]—mentions no reason for the order of mistrial. That entry does mention, not once but twice, that the oath administered to the panel and then to the twelve jurors was *the oath in a civil cause [case].* The next day, at the outset of the retrial, the defendant moved for dismissal on the ground that the successive trial put him twice in jeopardy. The motion alleged simply that on March 19, 1984, the trial of the

offenses was commenced, the jury sworn, and "[t]hat without the consent or waiver of the defendant the court declared a mistrial." The trial event which prompted the declaration was not described.

The court formally denied the motion with the explanation:

> The jury proceedings we were following yesterday—*no instructions had been read to the jury.* The oath administered was the oath in a civil case, administered without benefit of *One and Two* [sic— *One 0 Two?* [1.02?] ]. And the instruction the Court had prepared to read to the jury was a MAI Instruction, general instruction, and not MAI–CR. *I feel that the jury would have been without authority to punish this defendant in any event, had we proceeded on the civil instruction. Obviously that is the reason I stopped the trial, realizing I had erred in proceeding with the civil instructions.* Therefore, since they did not have any authority to punish him, I do not feel double jeopardy was attached. *[emphases added]*

That explanation leaves uncertain whether the mistrial was prompted because the "oath as in a civil case" was administered to the panel prior to voir dire and then to the jury selected and constituted [as the March 10, 1984, order of mistrial also recites], or because the court had "proceed[ed] with the civil instructions" for the voir dire, or simply [as the agreement of counsel tenders for presentation of the point on appeal] that the court neglected to preface the voir dire of the prospective jurors with oral instruction MAI–CR 2d 1.02. That "explanation" confounds understanding. A jury panel as well as the constituted jury discharges an identical duty—whether the trial be a civil or criminal action—and elicits an identical pledge.[3] Furthermore, the practice in a *civil case* does not provide for a formal oral instruction to the panel of prospective jurors on the order of MAI–CR 2d 1.02: that procedure appertains to a *criminal case* only. If the "explanation" means that a civil instruction was given the twelve selected and impaneled as a jury, then the propriety of the order of mistrial assumes a different dimension. Thus, the "explanation" by the court [among the several] "that is the reason I stopped the trial, realizing I had erred in proceeding with civil instructions" neither defines nor clarifies the perceived error which induced the order of mistrial.

The litigants, as we note, tender agreement that the court declared the mistrial because MAI–CR 2d 1.02 was not given to the panel of prospective jurors as criminal procedure directs. That consensus emerged among counsel and the court at the motion for new trial hearing on April 20, 1984, some month after the mistrial and retrial. It is evident nonetheless that the court was induced to the order of mistrial because—whatever the antecedent error or errors—as the "explanation" iterates and reiterates, "the jury would have been without authority to punish this defendant." Thus, the declaration of mistrial rests on the premise that the jury was disabled from a verdict: that is, that the judicial error was jurisdictional.

■ We assume for purpose of decision that the neglect to give MAI–CR 2d 1.02 prompted the court to declare the mistrial. The question remains whether, the circumstances considered, there was a manifest necessity for the act, or that the ends of

---

3. The practice prescribed by law for impaneling jurors is the same, whether in a civil case or in a criminal case. § 546.060, RSMo 1978; *State v. Meininger,* 290 S.W. 1007, 1008[1, 2] (Mo.1926).

The oath to qualify a panel recites [Bench Book for Missouri Trial Judges, § 14.22 (1974)]: You, and each of you, do solemnly swear that you will well and truly answer such questions that may be propounded to you by and under the direction of the court, touching your qualifications to serve as jurors, so help you God.

The oath to the jury recites [§ 14.26, supra]: You, and each of you, do solemnly swear [declare and affirm] that you will well and truly try the issues joined to you in this cause and a true verdict of your findings render according to the law and the evidence, so help you God.

public justice would otherwise be defeated. *United States v. Perez,* supra. In terms of the *Illinois v. Somerville,* supra, formulation: A trial judge may declare a mistrial [so that a retrial does not put the defendant twice in jeopardy] "if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." On that principle, the ends of justice are not subserved by a jury trial continued to verdict where judicial error "make[s] reversal on appeal a certainty." *Illinois v. Somerville,* supra, l.c. 463, 93 S.Ct. 1070. The prosecution argues that MAI–CR 2d is a mandatory instruction, and hence the failure to address that form to the jury panel doomed any conviction to foregone reversal.

In a criminal case, the court must read MAI–CR 2d 1.02 to the panel of prospective jurors prior to the voir dire examination. Rule 28.02(a). The instruction is read orally, but is neither assigned a number nor given to the jury during deliberation on the verdict. The tenor of the instruction is discursive and hortatory: the court informs the panel as to the function of the voir dire, the role of counsel, their names, the necessity for the questions, the order of inquiry, the incident of the oath and the importance of their thoughtful responses, that only twelve among them will be selected to try the case, the identity of the defendant, a description of the charge of offense, and the explanation that the defendant denies guilt—and hence the occasion for the trial. The instruction also informs the panel on the burden of proof in the terminology of MAI–CR 2d 2.20—itself an instruction mandated and reiterated in the later trial. Thus, MAI–CR 2d 1.02 is a medley which describes the mechanics of jury selection and advises on the burden of proof. MAI–CR 2d 1.02 is a mandatory instruction. Notes on Use, Rule 28.02(a). The failure to give the instruction "shall constitute error, its prejudicial effect to be judicially determined." Rule 28.02(e).

The prosecution contends that the neglect to give a mandatory MAI–CR 2d instruction was prejudicial [and any eventual conviction foredoomed to certain reversal] —therefore, the ends of public justice were subserved by declaration of mistrial which spared the prosecution the useless gesture of proof, submission and verdict. The rule—and hence the judicial policy which governs—however, does not impose a *per se* sanction of prejudice and reversal for the failure to give MAI–CR 2d 1.02 or any other of the mandated instructions, but only colors noncompliance with error, "its prejudicial effect to be judicially determined." Rule 28.02(e). *State v. Betts,* 642 S.W.2d 604, 606[2] (Mo.1982); *State v. Sole,* 579 S.W.2d 785, 786[2] (Mo.App.1979). This court, in *State v. Thomas,* 526 S.W.2d 393 (Mo.App.1975), was asked to review as prejudicial error the neglect of the trial court to give the prospective panel [then] MAI–CR 1.02 as mandated by [then] Rule 20.02. The court was unable to make review because the record of the voir dire and selection process was not preserved in transcription. The opinion confirmed, nevertheless, that even the lapse of the MAI–CR 1.02 instruction—mandated by rule but omitted from the trial altogether— was governed by the prescription of Rule 20.02(e) [now Rule 28.02(e)] that the prejudicial effect of the error remained a matter for judicial determination [*Thomas, supra,* l.c. 394[1]]:

> "Prejudice cannot exist in the vacuum of a mere alleged failure to give this instruction. *Prejudice must arise from some act or misconduct in the trial which affected its outcome.*" [emphasis added]

The trial was aborted at outset, without attempt by the court to meliorate the error. There is no reason to presume— as does the prosecution—that, in the circumstances of a trial for the breach of two city ordinances, the neglect to explain the voir dire mechanics was a source of befuddlement to the panel or impaired the emer-

gence of an impartial jury. There is simply no rule of procedure, rule of decision, or other judicial policy which colors as conclusively prejudiced a conviction by a jury uninstructed by MAI-CR 2d 1.02—so as to invest the *ex mero motu* declaration of mistrial by the trial judge as an act of "manifest necessity," and so enable a retrial free from double jeopardy. We note that *State v. Clifton,* 549 S.W.2d 891 (Mo. App.1977) [rendered by the eastern district of the court of appeals] decides that the failure of the trial judge to instruct in the terms of MAI-CR2d 1.02 was an error "presumptively prejudicial." That presumption of prejudice, however, as the decisions connote,[4] does not amount to an actual prejudice, adjudicated and found, but to an allocation of the burden of proof on that issue: that the burden to show nonprejudice rests on the proponent of the suspect instruction. [*See State v. Clifton,* supra, and the cases cited.]

■■■ The most recent decisions by our supreme court en banc notice and approve the trend of appeals courts to sustain a verdict, although the submission misapplies or neglects a designated MAI form, where that error does not impair the fair presentation of the case to the jury or the adversary in oral argument. These decisions confirm with emphasis that the judicial determination of prejudice in such a case rests on more than the fact of the irregularity itself, but on *a substantial indication of prejudice.* Thus, in *Fowler v. Park Corporation,* 673 S.W.2d 749 (Mo. banc 1984), where the verdict director submitted the wrong form definition of *negligence [highest degree of care rather than ordinary care]*—an error theretofore considered a misdirection, and hence prejudicial—the supreme court en banc found

that the jury was not misled nor counsel disadvantaged in the summation, and hence the verdict was not prejudiced and should stand. In the terms of the decision [l.c. 757]:

> Rule 70.02(c) [counterpart of criminal Rule 28.01(e) does not command reversal simply because there is a deviation from MAI.1. *There is a risk that the court will find that the error is not prejudicial so as to require reversal.*
>
> Retrials are burdensome. *There has been in recent years a trend away from reversal for error in instruction, unless there is a substantial indication of prejudice. This trend appears in both civil and in criminal cases.* [citations omitted] [emphasis added]

*Also Hudson v. Carr,* 668 S.W.2d 68, 71[3] (Mo. banc (1984).

■■■ The question of actual prejudice remains a matter for judicial determination. A *sua sponte* declaration of mistrial subserves the ends of public justice—and so presents no bar to a retrial—only where the error which induced that action "make[s] reversal on appeal a certainty." *Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). The reversal of an eventual conviction for the neglect to instruct by MAI-CR 2d 1.02 was no certainty, but remained a matter of judicial determination. The retrial, therefore, put the defendant twice in jeopardy, and the conviction may not stand.

■■■ The declaration of mistrial was mistaken, not malevolent. It was prompted by the misconception of law that the error [assumed to be the failure to instruct by MAI-CR 2d 1.02] deprived the jury of authority to render a verdict.[5] In order to avoid the bar of double jeopardy, however,

---

4. The *presumptively prejudicial* attribution to a deviation from an applicable MAI form derives from *Brown v. St. Louis Public Service Company,* 421 S.W.2d 255 (Mo. banc 1967), l.c. 259[3], and emerges in numerous successive civil and criminal decisions. *See, for instance State v. Billingsley,* 534 S.W.2d 484, 485[1] (Mo.App. 1975) and the cases cited in *Clifton,* supra.

5. A judge acts from *manifest necessity*—and double jeopardy does not bar a retrial—where the order of mistrial in the first case rests on want of jurisdiction over the subject matter of the prosecution. *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In that case, the trial judge became aware for the

it is not enough that the trial judge acts out of interest for the defendant. That is because a defendant in a criminal case owns "the valued right to have his trial completed by a particular tribunal" [*Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)], and a sua sponte termination of the trial short of verdict deprives the defendant of that right. *State v. Irving*, 559 S.W.2d 301, 310[11, 12] (Mo. App.1977). Thus, the defendant has "a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial." *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). In a case, especially, of a trial tainted by error, not of the defendant but of the judge, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed." *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). In this case—where the error to instruct was not simply prelude to inevitable prejudice and reversal—there was a safe alternative open to the court. The trial court could have continued the proceedings and put the prosecution to its proof. That jury may have returned an acquittal.

■■■■■ The prosecution contends—and the defendant and court concur—that when the court became aware of the error in the failure to instruct the jury by MAI–CR 2d 1.02, after the jury was sworn and impaneled but before the declaration of mistrial, the court offered the defendant the option to waive the error in lieu of declaration of mistrial. The defendant refused, and chose rather to complete the trial and obtain a verdict from the jury. The prosecution argues that this obduracy proves that the

defendant would have sought reversal for the error in noninstruction, and therefore the "manifest necessity" for the court to exercise its discretion in favor of mistrial was demonstrated. The tender of the court to forgo mistrial in exchange for the waiver of error by the defendant, the briefs relate, was conducted in camera and off the record. We assume the fact for purpose of response and opinion. That is not the question double jeopardy presents for answer. The right of a defendant to be tried by a particular tribunal is a prerogative of value. In the case of judicial error, the Double Jeopardy Clause commits to the defendant the primary control over the course to be followed. *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). The defendant may choose to move for a mistrial, or waive the error, or go to the jury "and, perhaps, end the dispute then and there with an acquittal," or simply leave the court to deal with its own error. *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). The question double jeopardy *does* present is: "whether ... taking all the circumstances into consideration, there [was] a manifest necessity for the act [of mistrial], or the ends of public justice would otherwise be defeated." *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824). We have concluded that the noninstruction error was not conclusively prejudicial, so that reversal of a conviction on appeal was foregone—and therefore manifest necessity for the mistrial lacked, and public justice was not thwarted. *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973).

■■■■■ The unrecorded interchange among the principals in chambers [of an option of waiver or mistrial tendered to the defendant by the court], notwithstanding, the formal record of the court proceedings

first time after the jury was sworn, that the indictment [under state law] was so defective as a statement of charge that the trial court lacked jurisdiction over the defendant. It was a defect,

moreover, that state procedure deemed not curable by amendment. A conviction, therefore, was subject to "upset at will" by the parties on appeal or by habeas corpus.

on March 19, 1984, recites that after the voir dire of the panel and the selection of the twelve as jurors and the administration of the oath: *Defendant makes oral motion that defendant be discharged for failure to use criminal procedure.* That motion, made *before* the *sua sponte* declaration of mistrial by the court, could have been understood as a request for mistrial, since the court had not yet acted *sua sponte,* and the trial was not yet aborted. That is to say, that although the defendant was in jeopardy, he was not yet faced with double jeopardy, and hence could not have been entitled to discharge. The court refused that invitation, however—and with it, the opportunity to correct whatever error induced that motion and the subsequent *sua sponte* declaration by the court, and so have avoided the implication of double jeopardy. The record recites, without other explanation: *Request is denied and court declares mistrial.*

The retrial put the defendant twice in jeopardy, and the convictions returned by that jury may not stand.

The defendant is discharged.

All concur.