

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102678 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 14SL-CR00017 |
| | ) | |
| ARTHUR B. ROBINSON, | ) | Honorable Gloria Clark Reno |
| | ) | |
| Defendant / Appellant. | ) | FILED:  March 22, 2016 |

OPINION

Arthur B. Robinson (Defendant) appeals the judgment of his conviction after a jury trial on one count of burglary in the first degree, in violation of Section 569.160, RSMo 2000.[1] The trial court sentenced Defendant, as a prior and persistent offender, to twenty years' imprisonment. We reverse and remand for new trial.

Factual and Procedural Background

In January 2014, the State charged Defendant with first-degree burglary in violation of Section 569.160, and with resisting or interfering with arrest in violation of Section 575.150. The resisting arrest charge was dismissed, and the case went to trial on the burglary charge. At the commencement of voir dire, however, the trial court informed the jury that the State had charged Defendant with both felonies. Defense counsel moved for a mistrial due to that disclosure, and

---

[1]Unless otherwise indicated, all further statutory references are to RSMo 2000, as amended.

the trial court denied the motion. The trial court then instructed the jury pool as to the presumption of Defendant's innocence, the reasonable doubt standard, and that the charge against Defendant was not evidence. After questioning by both parties, the jury was selected and sworn in.

In every criminal trial, the judge is mandated to read three introductory pattern instructions as soon as the jury is sworn. MAI-CR3d 300.06 explains the order of the proceedings and the occasional need for delay:

This case will proceed in the following order:

First, the Court will read to you two instructions concerning the law applicable to this case and its trial. Next, the attorney for the state must make an opening statement outlining what the attorney expects the state's evidence will be. The attorney for the defendant is not required to make an opening statement then or at any other time. However, if the attorney chooses to do so, he may make an opening statement after that of the state, or the attorney may reserve his opening statement until the conclusion of the state's evidence.

Evidence will then be introduced.

At the conclusion of all the evidence, further instructions in writing concerning the law will be read to you by the Court, after which the attorneys may make their arguments. You will then be given the written instructions of the Court to take with you to the jury room. You will go to that room, select a foreperson, deliberate, and arrive at your verdict.

Sometimes there are delays or conferences out of your hearing with the attorneys about matters of law. There are good reasons for these delays and conferences. The Court is confident that you will be patient and understanding. We will have recesses from time to time.

The following two instructions of law are for your guidance in this case. The two of them, along with other instructions in writing read to you at the close of all the evidence, will be handed to you at that time to take to your jury room.

Trial courts must then read MAI-CR3d 302.01, which delineates the duties of judge and jury:

2

Those who participate in a jury trial must do so in accordance with established rules. This is true of the parties, the witnesses, the lawyers, and the judge. It is equally true of jurors. It is the court's duty to enforce these rules and to instruct you upon the law applicable to the case. It is your duty to follow the law as the court gives it to you.

However, no statement, ruling, or remark that I may make during the trial is intended to indicate my opinion of what the facts are. It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

It is important for you to understand that this case must be decided only by the evidence presented in the proceedings in this courtroom and the instructions I give you. The reason for this is that the evidence presented in court is reviewed by the lawyers and the court, and the lawyers have the opportunity to comment on, or dispute, evidence presented in court. If you obtain information from other places, the lawyers do not have the opportunity to comment on or dispute it. Fairness and our system of justice require giving both sides the opportunity to view and comment on all evidence in the case. It is unfair to the parties if you obtain information about the case outside this courtroom.

Therefore, you should not visit the scene of any of the incidents described in this case, nor should you conduct your own research or investigation. For example, you should not conduct any independent research of any type by reference to textbooks, dictionaries, magazines, the Internet, a person you consider to be knowledgeable or any other means about any issue in this case, or any witnesses, parties, lawyers, medical or scientific terminology, or evidence that is any way involved in this trial.

You should not communicate, use a cell phone, record, photograph, video, e-mail, blog, tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person. This prohibition on communication about this trial includes use of the Internet, [*List popular websites such as "Facebook," "MySpace," "Twitter."*], or any other personal or public website.

Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until you have heard all the evidence and the case is given to you to decide.

If the trial court plans to allow jurors to take notes, it adds parenthetical information from MAI-CR3d 302.01:

Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only. You may not take any notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.

Do not discuss or share your notes with anyone until you begin your deliberations. During deliberations, if you choose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.

After you reach your verdict, your notes will be collected and destroyed. No one will be allowed to read them.

Courts then proceed to read MAI-CR3d 302.02, which defines what is—and what is not—evidence:

You must not assume as true any fact solely because it is included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer.

From time to time the attorneys may make objections. They have a right to do so and are only doing their duty as they see it. You should draw no inference from the fact that an objection has been made.

If the court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been. The same applies to exhibits offered but excluded from the evidence after an objection has been sustained. You will also disregard any answer or other matter which the court directs you not to consider and anything which the court orders stricken from the record.

The opening statements of attorneys are not evidence. Also, you must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the court. However, the attorneys may enter into stipulations of fact. These stipulations become part of the evidence and are to be considered by you as such.

In the instant case, rather than give the preliminary instructions above, the trial court immediately turned proceedings over to the State, which made its opening argument. Neither the State nor Defendant made an objection to the trial court's failure to read the preliminary instructions. Given the disposition of this case, only a brief recitation of the facts is necessary viewed in the light most favorable to the verdict. The parties introduced testimony from several witnesses, including a victim who testified she heard knocking on her door, footsteps inside her residence, and thereafter saw Defendant near her porch. Other witnesses testified that they saw a man who matched Defendant's description on the victim's porch and near the scene. Defendant was arrested after fleeing the area and police. Defendant told the police he was trying to earn money by shoveling snow but did not enter the victim's residence. Defendant didn't testify at trial but called several witnesses who testified Defendant had shoveled walks for them. After presentation of evidence by the State and by Defendant respectively, the trial court denied Defendant's motions for judgment of acquittal.

Thereafter, the failure to read preliminary instructions 300.06, 302.01, and 302.02 must have been noted, though no specifics were transcribed in our record on appeal.[2] A brief record regarding the jury instructions was made. The prosecutor asked: "regarding 302.01 and 302.02, are we still going to do that before the closing?" The judge answered: "Yes." The parties agreed that Instruction 1 would be MAI-CR3d 302.01 and that Instruction 2 would be 302.02. Those instructions contain language forbidding jurors from certain behavior, as noted below. Rather

---

[2] On appeal, the failure to give instructions based on MAI-CR3d 300.06, 302.01, and 302.02 at the beginning of trial was conceded by the State.

5

than performing an individual voir dire of the jury panel, the trial court expressed its intent to change the instructions' language to past tense and inquire whether the jury had comported with the directives.

The text of Instruction 1 was identical to MAI-CR3d 302.01, except for the following changes (emphasis here):

> Therefore, you *should not have* visited the scene of any of the incidents described in this case, nor *should you have conducted* your own research or investigations. For example, you *should not have* conducted any independent research…
>
> You *should also have not communicated* by use of a cell phone, record, photograph, video, email, blog, tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person.

The trial judge questioned the jury about those forbidden behaviors:

> Did any of you conduct any independent research, review any magazines, dictionaries, or talk to anyone about the case as was instructed you at the very beginning not to discuss this case among yourselves or talk to anyone about the case? Did anyone do that? . . . Did anyone [communicate by use of a cell phone, record, photograph, video, e-mail, blog, tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person?

No jurors responded affirmatively.

Regarding Instruction 2, the trial court changed to the past tense certain clauses from MAI-CR3d 302.02, as follows:

> You *are not to* assume as true any fact solely because it *was* included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer.
>
> From time to time the attorneys made objections. They have a right to do so and *in doing that, they were* only doing their duty as they *saw* it. You *were to* draw no inference from the fact that an objection has been made.
>
> If the court *sustained* an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been. The same applies to exhibits offered but excluded from the evidence after an objection *was* sustained. You will also disregard any answer or other

6

> matter which the court *directed* you not to consider and anything which the court orders stricken from the record.
>
> The opening statements of attorneys are not evidence. Also, you must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the court. However, the attorneys may enter into stipulations of fact. These stipulations become part of the evidence and are to be considered by you as such.

The trial court made no inquiries whether jurors comported with Instruction 2's directives. Nor did it give MAI-CR3d 300.06 in any form.

The parties made their closing arguments and the case was submitted to the jury. As required by our precedent, see State v. Christian, 184 S.W.3d 597, 603 (Mo. App. E.D. 2006), the jury was instructed on both the burglary charge and the lesser-included offense of first-degree trespass. The jury found Defendant guilty of burglary in the first degree after a three-day trial.

In a motion for judgment of acquittal or, alternatively, for new trial, Defendant raised for the first time the trial court's failure to give the preliminary jury instructions. The trial court denied the motion, found Defendant to be a prior and persistent offender, and sentenced him to twenty years' imprisonment. The trial court entered judgment against Defendant, and this timely appeal followed.

Defendant assigns five errors to the trial court. Three arguments stem from the trial court's failure to read MAI-CR3d 300.06, MAI-CR3d 302.01, and MAI-CR3d 302.02 to the jury before opening arguments. Defendant further challenges the sufficiency of the evidence to support his conviction, as well as the trial court's decision not to grant a mistrial after it revealed Defendant's dismissed resisting arrest charge to the venire panel.

Because we find the trial court's failure to read MAI-CR3d 300.06, 302.01, and 302.02 at the beginning of the case resulted in plain error and is dispositive of this appeal, we address only the claims of instructional error.

Standard of Review

Rule 28.03[3] prohibits a party from assigning error to a trial court's failure to give an instruction unless the party objects to that failure both during trial and in a motion for new trial. Here, Defendant did not object to the trial court's failure to give the preliminary instructions, and correctly acknowledges that he did not preserve his claims of instructional error for review. Defendant therefore requests plain error review under Rule 30.20.

The State initially counters that cases like State v. Boyd and State v. Hodge, in which this court declined to exercise plain error review over failures to give a mandatory instruction, preclude any plain error review here. See Boyd, 600 S.W.2d 97, 100 (Mo. App. E.D. 1980); Hodge, 600 S.W.2d 400, 401 (Mo. App. S.D. 1983). Insofar as those cases stood for the proposition that failing to object to instructional error at trial precludes *any* appellate review, they have clearly been supplanted by State v. Wurtzberger. There, the Supreme Court of Missouri clarified that Rule 28.03 does not trump Rule 30.20, and that a party's waiver of appellate review does not extend to unpreserved claims of plain error. Wurtzberger, 40 S.W.3d 893, 897–98 (Mo. banc 2001). Under Rule 30.20, we accordingly have discretion to consider unpreserved claims of error affecting substantial rights if manifest injustice or a miscarriage of justice would otherwise occur. State v. Dudley, 475 S.W.3d 712, 716 (Mo. App. E.D. 2015).

We will affirm unless we find that the trial court committed an error which caused manifest injustice or a miscarriage of justice. State v. Russell, 462 S.W.3d 878, 882 (Mo. App. E.D. 2015). On plain error review, the appellant bears the burden of showing the occurrence of

---

[3] All rule references are to Mo. R. Crim. P.

plain error resulting in manifest injustice or a miscarriage of justice. State v. Myles, --- S.W.3d ----, 2015 WL 5231606, at *3 (Mo. App. E.D. 2015). The analysis proceeds in two steps. State v. Smith, 370 S.W.3d 891, 896 (Mo. App. E.D. 2012) (internal citation omitted). First, we examine whether, on the face of the claim, an evident, obvious, and clear error has occurred. Id. If we so conclude, we may proceed to the second step, where we consider whether manifest injustice or a miscarriage of justice actually resulted. Id.

Discussion

The trial court's failure to read preliminary instructions meets the first prong of plain error review. "Whenever there is an MAI-CR instruction" applicable under the law and Notes on Use, that instruction "*shall* be given or used to the exclusion of any other instruction or verdict form." Rule 28.02(c) (emphasis here). The instructions at issue here are mandatory. Note on Use 2 to MAI-CR3d 300.06 requires that "[t]his instruction must be read immediately after the jury is sworn and before reading MAI-CR3d 302.01 and 302.02. It will not be reread to the jury at the conclusion of the evidence and will not be numbered or given to the jury when it retires to deliberate." Note on Use 2 to MAI-CR3d 302.01 requires "[t]his instruction will be Instruction No. 1, and will be read immediately following MAI-CR3d 300.06." Finally, Note on Use 2 to MAI-CR3d 302.02 provides: "[t]his instruction will be Instruction No. 2, and will be read immediately following MAI-CR3d 302.01." On its face, therefore, the trial court's failure to give the three mandatory instructions immediately after swearing in the jury is an evident, obvious, and clear error. See State v. Neal, 304 S.W.3d 749, 754 (Mo. App. S.D. 2010) (failure to give an instruction in accordance with an MAI-CR or any applicable Notes on Use is error, the prejudicial effect to be judicially determined).

Even when clear and obvious, instructional error seldom constitutes plain error. Myles, 2015 WL 5231606, at *3. Plain error will be found only when the claimed error actually resulted in manifest injustice or a miscarriage of justice. State v. Smith, 370 S.W.3d at 896. "Manifest injustice or miscarriage of justice" is not an easy phrase to define. State v. Doolittle, 896 S.W.2d 27, 29 (Mo. banc 1995) (internal citation omitted). It results when the trial court has so misdirected or failed to instruct the jury that it is apparent the error affected (or, as some cases describe it, "tainted") the verdict. Myles, 2015 WL 5231606, at *5; Bolden v. State, 423 S.W.3d 803, 813 (Mo. App. E.D. 2013).

Some cases (and the State's argument here) conflate the issue of whether an error taints the verdict with the phrase "outcome determinative." See, e.g., State v. Smith, 293 S.W.3d 149, 150 (Mo. App. S.D. 2009); State v. Jones, 296 S.W.3d 506, 513 (Mo. App. E.D. 2009). We reject the notion that manifest injustice or miscarriage of justice can be so narrowly defined. The convergence of the two concepts is understandable given that plain instructional error typically results when the judge affirmatively instructs the jury, as opposed to here, where the judge's error is one of total omission. See, e.g. State v. Neal, 328 S.W.3d 374, 383 (Mo. App. W.D. 2010) (use of incorrect instruction totally excused State from its burden of proof); State v. Paro, 952 S.W.2d 339, 341–42 (Mo. App. E.D. 1997) (given instruction misstated elements of offense and overstated maximum term of imprisonment). Although a finding of "outcome determinative" naturally leads to a holding of manifest injustice or miscarriage of justice, the converse does not follow. When an instruction is actually given, a reviewing court can discern whether a jury following that instruction could have arrived at a verdict based on insufficient evidence or misstated law. But where, as here, an appellate court has no logical trail to follow, using an "outcome determinative" test precludes a complete examination of whether the trial court has "so

misdirected or *failed to instruct* the jury" that the verdict was tainted. State v. Magnum, 390 S.W.3d 853, 861 (Mo. App. E.D. 2013) (emphasis here).

Regarding the effect of the *absence* of instructions, we find guidance in two cases: State v. Williams and State v. Smith. In Williams, the Supreme Court of Missouri addressed, on plain error review, the prejudicial effect of failing to submit to the jury (in written form) the parenthetical note-taking portion of MAI-CR3d 302.01. Williams, 97 S.W.3d 462, 472 (Mo. banc 2003). Though the trial court's failure was "technically erroneous," the court held the error fell short of a miscarriage of justice because, by reading the instruction aloud, "the trial court provided the jury with sufficient guidance" regarding the proper role of notetaking. Id.

In Smith, our Western District colleagues used Williams' "sufficient guidance" standard to find plain error where a trial court failed to read MAI-CR3d 302.01's parenthetical note-taking section to the jury, despite the fact jurors were allowed to take notes.[4] Smith, 154 S.W.3d 461, 463 (Mo. App. W.D. 2005). That instruction admonishes the jury, *inter alia*, that notes taken during trial are not evidence, that notes should not be assumed to be more accurate than juror recollections, and that note-taking may interfere with each juror's ability to observe the evidence and witnesses as they are presented. Id. at 464; MAI-CR3d 302.01.

At the foundation of Smith's reasoning lay the observation that the Missouri Supreme Court, by mandating that the note-taking language be included in the first instruction, "obviously believed that there was potential for abuse from note-taking by jurors, unless they were given guidance . . . and that the [other] existing mandatory instructions were not sufficient to provide that guidance." Id. at 470. The Smith panel first compared the contents of the missing instruction to other instructions and oral statements, and identified where other directives were "functional

_____

[4] The trial court in the instant case likewise failed to read MAI-CR3d 302.01's parenthetical information, but the record does not reveal whether the jury was permitted to take notes and this is not a claimed error in this appeal.

equivalents," *i.e.* whether they provided jurors with the same information as MAI-CR3d 302.01. Id. at 466–70. For example, some of the information provided to jurors before recesses would have implied that jurors could not discuss their notes, a prohibition also found in MAI-CR3d 302.01. Id. at 469. But much of the information included in the note-taking instruction was not given elsewhere during trial, and in any event came in piecemeal fashion, thereby de-emphasizing for the jurors the importance of their responsibility to focus on the evidence. Id. at 471.

Our colleagues identified grave concerns about the jury's ability to perform its fact-finding mission despite the lack of guidance. The trial court did not warn jurors of the fact that note-taking could interfere with the ability to listen to the evidence and observe the witness, thereby failing to remind note-taking jurors "to minimize the resulting distraction so they would not be abdicating their responsibilities . . . to listen to the evidence and observe witnesses." Id. at 471. That concern, that jurors would rely on notes rather than listen and observe the evidence (and remember the evidence individually), is one of the very reasons MAI-CR3d 302.01 exists. Id. at 470. Further, our colleagues highlighted the importance of the jury's understanding of precisely what is (and what is not) "evidence." Failing to read MAI-CR3d 302.01 allowed the jury to assume their notes were evidence: it was a "stretch to believe that [admonitions from other instructions, including MAI-CR 302.02] were the equivalent of advising the jurors, as required by MAI-CR3d 302.01, that their notes were not evidence." Id. at 470.

Equally vital to Smith's outcome was the fact that the missing instruction should have been given at the beginning of the case. In "mandating that the note-taking information be read to the jurors at the commencement of the trial, it is . . . obvious that the [Supreme] Court believed that it was vital that jurors were made aware of [the possibility of being distracted from

12

the evidence] from the beginning." Id. at 470–71. The jury's duty to listen to the evidence and observe the witnesses begins as soon as the first witness takes the stand, so the warning not to over-rely on notes "would be useless, unless given at the beginning of trial." Id. at 471.

We find Smith's approach consonant with the weighty interests implicated here: the roles of jury and judge in our criminal justice system. The right to an impartial jury is enshrined in both the federal and state constitutions. U.S. Const. amend. VI; Mo. Const. art. I, sec. 18(a). The right to a jury trial is no procedural formality; it is a fundamental reservation of power in our constitutional structure, meant to stand as a bulwark against "judicial despotism," U.S. v. Booker, 543 U.S. 220, 238–39 (2005), and to ensure the people's ultimate control in the judiciary, Blakely v. Washington, 542 U.S. 296, 305–06 (2004). Trial by jury has been called the "most priceless" safeguard for the preservation of individual liberty. Irvin v. Dowd, 366 U.S. 717, 721 (1961). Under the Constitution, the institution of the criminal trial purports "to provide a fair and reliable determination of guilt, and no procedure or occurrence which seriously threatens to divert it from that purpose can be tolerated." Estes v. Texas, 381 U.S. 532, 564 (1965) (Warren, C.J., concurring).

Perhaps the jury's most critical role is to assess evidence: a criminal defendant is entitled to a "panel of impartial, 'indifferent' jurors [whose] verdict *must be based upon evidence developed at the trial.*" Morgan v. Illinois, 504 U.S. 719, 727 (1992) (internal citation omitted) (emphasis here).[5] See also Ring v. Arizona, 536 U.S. 584, 598 (2002) (by the time the Sixth Amendment became law, the "jury's role in determining critical facts … was entrenched.") (internal citation omitted). Instructions to avoid prematurely forming opinions about a case's

---

[5] Insofar as we use them to establish a baseline for the jury's constitutional function, U.S. Supreme Court cases regarding the Sixth Amendment are instructive because, when it comes to the right to an impartial jury, Missouri's constitution affords greater protections than the federal constitution. State v. Lang, 795 S.W.2d 598, 600 n. 1 (Mo. App. E.D. 1990).

13

merits help a juror base her verdict on the evidence; once a juror forms an opinion, she can no longer be impartial. Irvin, 366 U.S. at 722.

To safeguard the jury's fact-finding role, courts must be alert to factors that may undermine fairness in the fact-finding process, and must carefully guard against the dilution of the principle that guilt must be established "by probative evidence" and beyond a reasonable doubt. Estelle v. Williams, 425 U.S. 501, 503 (1976). Though the impact of a particular practice on a verdict cannot always be fully determined, the "probability of deleterious effects on fundamental rights calls for close judicial scrutiny." Id. at 504. Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience. Id. When there is an unacceptable risk of impermissible factors affecting a jury's verdict, a proceeding may be inherently prejudicial. Holbrook v. Flynn, 475 U.S. 560, 570 (1986). See also State v. Neal, 304 S.W.3d 749, 755 (Mo. App. S.D. 2010) (when used while assessing erroneous jury instructions, "prejudice" means the potential for confusing or misleading the jury).

A jury's execution of its duty necessarily depends on the instructions it receives from the court. In Missouri, the trial court's duty to instruct the jury on the law was established as early as 1876. See State v. Martin, 602 S.W.2d 772, 775 (Mo. App. E.D. 1980) (citing State v. Lane, 64 Mo. 319 (1876)). Towards the end of the nineteenth century, Justice Joseph Story explained the intertwined duties of judge and jury:

> [It is] the duty of the court to expound the law, and that of the jury to apply the law as thus declared to the facts as ascertained by them. In this separation of functions of court and jury is found the chief value, as well as safety, of the jury system. Those functions cannot be confounded or disregarded without endangering the stability of public justice, as well as the security of private and personal rights.

14

Sparf v. United States, 156 U.S. 51, 106 (1985). "Upon the [trial] court *rests the responsibility of declaring the law*." Id. (emphasis here). That responsibility is related to the duty to define and explain technical terms which the jury may otherwise misapply. State v. Jackson, 369 S.W.2d 199, 2015 (Mo. 1963).

In finding prejudicial one trial court's failure to read accurately a mandatory preliminary instruction (MAI-CR 1.02, which at that time instructed voir dire panel members vis-à-vis their behavior), we highlighted the importance of a judge accurately and consistently delivering guidance to the jury. In doing so, we  underscored the importance of Missouri's pattern instructions:

> MAI-CR instructions are the product of a Special Committee of the Missouri Bar appointed for the purpose of formulating pattern instructions for use in criminal cases followed by an interchange of ideas and redraftsmanship in cooperation with the Supreme Court towards the end that there be fewer reversals of convictions by reason of faulty instructions and so that statewide uniformity in the reading of instructions to juries in criminal cases would be achieved. The particular [preliminary] instruction here … is the product of thorough study by representatives of the circuit bench, prosecutors, defense counsel and law professors knowledgeable in the administration of criminal justice, adopted only after submission to many members of the Bar and consideration by both the Board of Governors of the Missouri Bar and the members of the Supreme Court. The Supreme Court mandated its reading to the jury by all trial judges of this state … We can conceive of no reason why these directions of the Supreme Court should not be followed by the trial courts of Missouri.
>
> [. . .] If we, the judiciary, constantly give currency to this practice, the value and benefits to be derived from the adoption of pattern instructions and the time and efforts extended by our committee of the Missouri Bar on Criminal Pattern Instructions will both be lost.

State v. Clifton, 549 S.W.2d 891, 896 (Mo. App. 1977). Strict compliance with pattern instructions also promotes efficient appeals: we "could well do without the additional chore of examining those cases where" parties assign error to "unnecessary deviations, modification[,] subjective judicial constructions," or, as here, deletions. Id. (internal quotation marks omitted).

Before turning to the case at hand, we finally note that trial judges generally have great influence over jurors, who are "quite sensitive" to any indications of the judge's belief, and are "inclined to draw conclusions" based on a judge's behavior. State v. Montgomery, 251 S.W.2d 654, 657 (Mo. 1952). Relatedly, reviewing courts always presume jurors follow the trial court's instructions, even if the parties have provided incorrect legal theories during trial. See State v. Cornelious, 258 S.W.3d 461, 469 (Mo. App. W.D. 2008).

In the instant case, we conclude the trial court's failure to read MAI-CR3d 300.06, 302.01, and 302.02 left the jury with insufficient guidance. (Weighing such intertwined allegations of error together is within our discretion on plain error review, so we need not decide whether failing to read one of two of the three missing instructions would hypothetically constitute plain error. See State v. Callahan, 651 S.W.2d 186, 192 (Mo. App. W.D. 1982).) By changing some text of MAI-CR3d 302.01 to the past tense and questioning the jury, the trial court attempted to retroactively address some issues caused by failing to read those instructions early in the case. The questions posed to the entire jury (*e.g.*, "Did any of you conduct any independent research") may have addressed whether jurors discussed the case among themselves, tweeted / e-mailed / blogged / texted about the case, independently researched the allegations against Defendant, or visited the scene of the alleged crime as forbidden by the instruction.

However, multiple directives related to the jury's fact-finding mission went unheard altogether, or were given so late as to be "useless." See Smith, 154 S.W. 3d at 471. Most critically, the failure to read MAI-CR3d 302.01 and 302.02 left the jury without even the definition of evidence. Notably, neither the judge's comments and rulings nor the attorneys' arguments and objections constitute evidence, as stressed in the instructions. But here the jury

16

was left in the dark on those matters, even though every case must be decided "*only by the evidence* presented in the proceedings in [the] courtroom" (a directive that also went unheard before the evidence began, when it mattered most). The missing MAI-CR3d 302.01 would have offered not only a warning to avoid distractions, but also guidance in assessing evidence as it is presented. The jurors should have been told to consider the witnesses' manner while testifying, the ability and opportunity of a witness to observe and remember matters, a witness' bias or prejudice, and the reasonableness of testimony in the context of the entire case. Instead, the jury here was left rudderless as to its duty to examine the evidence.

Further, the trial court made no inquiries whether the jury had complied with the cautionary wording of MAI-CR3d 302.02, even though it changed the tense of portions of that instruction. We accordingly conclude that the jury could have assumed as true facts solely because they were included in or suggested by a question; that any juror could have drawn a negative inference against Defendant because an objection was made; and that the jury could have speculated as to the answer of any question to which an objection was sustained. See MAI-CR3d 302.02. Nor did the trial court attempt to gauge whether the jury followed instructions that go to the jury's impartiality and duty to focus on the evidence. For example, MAI-302.01 tells the jury to keep an open mind until all evidence has been presented. But instead of hearing that instruction, especially without MAI-CR3d 300.06's road map of the proceedings, which would have informed the jury when it could begin drawing conclusions about what it had seen and heard, the jury was left to form premature opinions about the case's merits, thereby casting grave doubt on the jury's impartiality. See Irvin, 366 U.S. at 722.

The State contends that our result should be guided by State v. Boyd, 600 S.W.2d 97 (Mo. App. E.D. 1980), where we declined to apply plain error review to a trial court's failure to

17

read MAI-CR 1.08(a) at the first recess. At the time, MAI-CR 1.08(a) warned jurors not to discuss any subject connected with the trial, or form or express any opinion about it, or access any media related to the case. At subsequent recesses, a shorter but similar warning was given via MAI-CR 1.08(b). Deeming the instruction "essentially procedural" (as opposed to substantive instructions given before closing arguments and submission of the case), we opined the issue had not been preserved for review. Boyd, 600 S.W.2d 97, 100 (Mo. App. E.D. 1980).

Boyd is distinguishable on several grounds. First, as discussed above, Boyd broadly applied Rule 28.03 to foreclose *any* review of unpreserved instructional error, a holding supplanted by Wurtzberger's rule that plain error review cannot be waived. Secondly, the Boyd court noted that MAI-CR 1.08(b), which largely tracks MAI-1.08(a), was repeated at subsequent recesses, thereby lessening the prejudice against the losing criminal defendant. The instant jury received no such cumulative, parallel guidance.[6] Moreover, the instruction in Boyd has undergone material revision since we decided that case. In contrast to MAI-CR 1.08, which was enacted in 1974 and simply warned jurors against performing outside research or discussing the trial, see State v. Abbott, 547 S.W.2d 853, 85 (Mo. App. 1977), the modern equivalent also instructs jurors: "[i]t is important that your decision be based only on the evidence presented to you in the proceedings in the courtroom," MAI-CR3d 300.04. Such language underscores for the jury the singular importance of untainted evidence, and by invoking the word "evidence"

---

[6] We acknowledge that MAI-CR3d 300.04.1 and 300.04.2 were given at the first recess and subsequent breaks in this case. Those "reminder" instructions generally mirror MAI-CR3d 302.01's prohibitions on performing research or communicating about the case, which may have lessened the failure to give those admonitions at the outset. While the reminder instructions do prohibit jurors from forming an opinion about the case, we find that warning (which is buried in the middle of the instructions) insufficient to atone for not explicitly instructing jurors about remaining impartial at the beginning of the case, as instructed by the MAI-CR committee. See Smith, 154 S.W.3d at 471 (by offering some missing instructional information in "piecemeal" fashion rather than at the beginning of the case, the trial court de-emphasized the importance of the jury's duties). And in any event, MAI-CR3d 300.04.1 incorporates the word "evidence," a vital term which remained undefined until after all the evidence was introduced.

18

depends on the jury's comprehension of the distinctions between evidence on one hand, and questioning, objections, and argument on the other.

Here, those distinctions should have been made by giving MAI-CR3d 302.02. Instead, the trial court gave no guidance on the matter until all evidence had been introduced, all objections had been made, and all questioning had stopped. Though the MAI-CR committee deemed it vital that the jury was informed of its duties to remain impartial and focus on the evidence "from the beginning" of the case, Smith, 154 S.W.3d at 470–71, in this case the jury received no guidance on those issues until after the fact. The jury heard all the evidence without being told what evidence is. It heard all the arguments, questions, and objections without knowing how to distinguish them from, and consider them less important than, evidence. In Smith, the mere failure to warn the jury about the potential perils of note-taking-related distraction was plain error. The deleterious effects on the jury's ability to assess the evidence and remain impartial in this case are even graver. Those effects require us to conclude that the verdict must be set aside.

We therefore hold that the jury did not receive "sufficient guidance" from the trial court, resulting in a manifest injustice or miscarriage of justice. Failing to give instructions based on MAI-CR3d 300.06, 302.01, and 302.02 at the outset of the trial was accordingly plain error.

Conclusion

The judgment of the Defendant's conviction for burglary in the first degree, Section 569.160, is reversed, and the cause is remanded for a new trial in accordance with this opinion.

_____
Mary K. Hoff, Judge

Robert G. Dowd, Jr., Presiding Judge and Roy L. Richter, Judge, concur.

19