In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

ANDREW BULLARD, ) ED108907
 )
 Appellant, ) Appeal from the Circuit Court of
 ) St. Louis County
v. ) 17SL-CC02557
 )
STATE OF MISSOURI, ) Honorable Ellen H. Ribaudo
 )
 Respondent. ) Filed: July 6, 2021

 Andrew Bullard (Movant) appeals from the motion court’s judgment denying his Rule

29.15 1 motion for post-conviction relief without an evidentiary hearing. A jury convicted

Movant of one count of child molestation in the first degree, in violation of Section 566.067. 2

He was sentenced to ten years of imprisonment in the Missouri Department of Corrections. We

affirm.

 BACKGROUND

 The State of Missouri (State) charged Movant with one count of child molestation in the

first degree, in violation of Section 566.067, by grand jury indictment. A jury trial took place

from February 27 to March 3, 2017. The details adduced at trial can be found in this Court’s

opinion affirming Movant’s conviction and sentence on direct appeal in State v. Bullard, 553

1
 All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise indicated.
2
 All statutory references are to the Missouri Revised Statutes (2016) as updated, unless otherwise indicated.
S.W.3d 901, 909 (Mo. App. E.D. 2018). For ease of understanding the issues on appeal, the

facts are repeated here.

 Victim’s father (Father) and Movant were best friends in high school. Movant lived with

him, Victim’s mother (Mother), and their two children for less than a year, until Father started a

job as an over-the-road truck driver in February 2010. In June 2011, after Father began

employment with a local company, Movant resumed spending time with the family when Victim

was four years old. Movant visited frequently in 2012, spending the night or entire weekend.

Generally, Movant slept in the living room with a pull-out couch, and Victim sometimes slept

there with him.

 In October 2012, Movant went on an outdoor trip with Father and Victim’s older brother

(Brother). When Movant and Brother went riding, Father looked through Movant’s cell phone

because it was the only phone that received service. Father found photos that made him decide

that Victim and Brother would no longer be left unattended around Movant.

 The next month, Father was at a bonfire at a friend’s house without Movant.

Conversation began about “a different kind of guy,” who “was a little weird,” but was not

Movant. Victim responded, “I know somebody who’s weirder than that.” When Father asked

her who, Victim reluctantly leaned into Father’s ear and said Movant. Father took Victim aside

and asked why Movant was weird. Victim described one night when Movant slept at their house

and Victim slept on the couch next to him. Victim explained that Movant pulled her panties

down and tried to put his penis in her vagina. Father told Victim to tell Mother what she had just

told him, then got into his car and started driving toward Movant’s house. Victim went to

Mother and said that she knew someone who was weird. Mother asked who and Victim

 2
responded Movant. Victim explained, “We were sleeping in the bed and he tried to pull my

underwear down and he tried to touch my potty with his wiener.”

 On his way to Movant’s house, Father called and asked him for an explanation as to why

his daughter would tell him “that a man that she’s looked at like a second father, she loves,

would tell me that she was sexually assaulted by you.” Movant initially denied the accusation

but Father said he did not believe him, and that Movant needed to tell the truth. Movant then

said, “I’m sorry.” Father asked if he admitted that he did this to his daughter, and Movant

repeated, “I’m sorry.” 3 Father replied he needed to turn himself into the police and elected to

return to the bonfire rather than confront Movant in person.

 Movant sent Father a text message the next afternoon saying, “I’m going in . . . I know

you’re still mad at me. I just hope you can find it in your heart to forgive me some day.” Father

interpreted the apologies as an admission of guilt. After sending the text, Movant performed a

Google search on his phone for a criminal defense lawyer in Crestwood.

 Mother brought Victim to Children’s Hospital on December 1, 2012, the day after she

disclosed the sexual assault. Social Worker Andrea Bagaglio (Bagaglio) was working then and

testified that Victim referred to both the penis and vagina on the anatomical diagram as the

“potty.” When asked if there were body parts that it was not okay for other people to touch,

Victim said the potty and the butt. Bagaglio asked whether anyone had ever touched those parts

of Victim’s body, and Victim held up one finger and said that one person had – Movant. Victim

pointed to the vaginal area on the drawing. She said it felt “weird because his potty was inside

my potty.” Victim said it happened on the pullout couch in the living room at home.

3
 However, Father told police that he asked Appellant, “So you did do it? You are owning up to it,” and that
Appellant responded, “Yeah, I did, and I’m very sorry.”

 3
 Forensic interviewer Diarra Cross-Davis (Cross-Davis) interviewed Victim in December

2012. Victim explained that the penis and vagina are body parts that are not supposed to be

touched. When asked if anyone had touched her vagina, Victim said Movant had. Victim

explained that she and Movant had been sleeping on the couch when Movant put his penis in her

vagina. Movant was holding his penis when he did so.

 Evidence of Google Search

 The procedural matter at issue here in Movant’s post-conviction relief appeal was not

discussed in State v. Bullard because it was not alleged as error in Movant’s direct appeal.

Specifically, Movant filed a motion to suppress all the evidence seized from his person,

residence, or property by the St. Louis County Police. Movant’s defense attorney (Trial

Counsel) argued the court should exclude a Google search that Movant conducted on his phone

for a criminal defense attorney. The State argued that the search showed Movant’s

consciousness of guilt. The trial court overruled the motion, finding the fact that a search was

conducted for a criminal defense lawyer was relevant and admissible in the case.

 During opening statement, the State told the jury there would be evidence that Movant

sent a text to Father asking for forgiveness, and he then did a Google search for a criminal

defense attorney on his phone. Trial Counsel told the jury that Father had called Movant the day

before, threatening to kill him and harm his family. Trial Counsel then made the following

statement:

 At this point [Movant] is scared to death. He’s scared for his life, and he’s scared
 for his family. He knows that [Father] is a hothead. He knows that [Father] owns
 several guns. And so he jumps out of bed. He puts on his clothes and he leaves his
 house and he doesn’t return until the following morning. And when he returns to
 his house he gets on his computer and begins frantically searching the internet so
 that he can get a restraining order against [Father].

 4
 Trial Counsel renewed the motion to suppress when the State called James Karase

(Karase), Supervisor of the Digital Forensics Unit for the St. Louis County Police Department.

The trial court overruled the objection and granted counsel’s request for a continuing objection.

Karase examined Movant’s phone and prepared an extraction report on data found on the phone.

He testified that Movant sent a text message to Father on December 1, 2012, stating he was

going to turn himself in to police and that he hoped Father would find it in his heart to forgive

Movant someday. Appellant performed a Google search for the term “criminal defense lawyer

in Crestwood” immediately following that text message. Karase said the search was entered as a

deleted text message.

 On direct examination, Movant testified that Father told him over the phone that he was

coming to shoot him with a gun. Movant said he had known Father since high school and

believed he was capable of that kind of violence. Movant further testified that Father owned

multiple rifles and pistols and would typically keep a pistol in his truck. He said he saw Father

hit someone at a bar once, and “saw him knock him out.” Movant said based on his phone

conversation with Father, he left his brother’s house where he was staying and returned the

following morning. Movant claimed that he never apologized over the phone to Father for

touching Victim inappropriately. He did admit that he texted Father, apologizing and saying that

he was going to turn himself in to the police. However, Movant acknowledged he did not turn

himself in, nor did he call 9-1-1 when he believed Father was coming to his house to kill him.

 When Movant returned home the following morning, he “started looking on the internet

on what I needed to do, someone I needed to talk to, possibly get a restraining order, talking to a

lawyer.” Movant said that he wanted to get some advice on the situation he was in and see what

kind of action he needed to take. Movant said when he made contact with a law office, he was

 5
advised that he should talk to a criminal defense attorney. He then expanded his search for a

lawyer in the Crestwood area.

 The State’s closing argument included the following statement:

 Now let’s talk about the statement that [Movant] made. [Father] called him
 and . . . told him that his daughter had just told him that [Movant] touched her
 vagina with his penis. As she said, touched my potty with his potty. And his
 response was not sorry, or I didn’t do it – I’m sorry, his response was not I didn’t
 do it. His response was sorry, sorry.
 And then [Father] said to him, turn yourself in or I’m calling the police.
 And the very next text that was sent by [Movant] to [Father] was, I’m going in. I
 hope you can find it in your heart to forgive me. And after that the defendant did a
 Google search for criminal defense attorneys.
 You’re instructed to make your decision based upon the evidence and
 reasonable inferences. The defense wants you to believe that [Movant] was so
 afraid of [Father] that he said forgive me instead of it didn’t happen. That doesn’t
 make sense. He wants you – the defendant wants you to think that he thought
 [Father] was going to kill him and kill his family that night. Yet we looked at the
 phone records. He did not pick up his phone and call the police. He didn’t call
 nine-one-one. In fact, he told this jury that [Father] was going to kill his family,
 but he didn’t bother calling his family that night because it was 9:30. That doesn’t
 make sense. Not one time did [Movant] say it didn’t happen. He said, forgive me.
 And you can see that text.
 Please use your reasonable inferences. You’re not expected to check your
 common sense at the door.

Further, Trial Counsel’s closing argument addressed the same topic:

 So what we do know is that [Father] takes off in the truck having gotten
 hardly any information at all and says basically I’m going to kill [Movant]. And
 his daughter says that twice. She says that to the forensic interviewer. My dad
 leaves, and he’s going to kill [Movant].
 How serious is it? Is it really a threat? Is this just bluster? We know it’s
 serious because [Mother] immediately realizes what’s happening. And we don’t
 have any idea if he turned around. We don’t have any idea if he didn’t get there
 and [Movant] had already left. Because he knew what kind of guy [Father] was.
 And so [Movant] may have made the appropriate decision to get the hell out of
 there.
 He was gone all night, as he testified. And his brother was not there. There
 was no one else there. He was trying to figure out what to do about this. And
 eventually he sends this text. And the text says, I hope you can find it in your heart
 to forgive me. And first he says, I’m going in. Well, we know he never went in.
 You know, if he was really looking for forgiveness, he would have gone in. He just
 wanted to make sure that there was some distance, some space between him.

 6
 Because even Lindsay Rogers told you years after this occurred [Father], when he
 told her about it he was still raging, yelling on the phone.
 And we also know, because [Mother] says, yeah, he’s got a pistol. We know
 he carries it in the car. So we knew he had every means to cause havoc and to cause
 death.
 And I do not think it would have served any purpose for [Movant] or anyone
 else to stand there, stand their ground and shoot it out. So he did what a lot of
 people would do. I’m leaving. And the next day he did a search to try to find out
 if he could talk to somebody to help him figure out what to do in these
 circumstances. Tried to reach lawyers, and he was told you need a criminal defense
 lawyer.
 And he did this – I mean, he did this Google search to try and get some
 information so he would know. Because he knows [Father] is either going to come
 and kill him or he’s going to turn him in to the police.

 Trial Counsel also asked the jury, “Is it so crazy to think you would like to have some

reasonable advice to know what to do under these circumstances[,]” before moving on to another

topic in the closing argument. In rebuttal, the prosecutor responded that the reasonable thing for

someone to do if they are about to be killed is to call the police.

 Jury Instructions

 In addition to the suppression of Movant’s search for an attorney, details of the jury

instructions are also relevant to this appeal. Specifically, after the jury was selected, the court

took an overnight recess and swore in the jury the following morning. The court did not read

instructions pursuant to MAI-CR3d 302.01 and 302.02 immediately after the jury was sworn.

Instead, it proceeded directly to the State’s opening statement. However, when the court took a

recess even during voir dire, it specifically reminded the jurors:

 Until you retire to consider your verdict, you must not discuss this case among
 yourselves or with anyone else or permit anyone to discuss it in your hearing. You
 should not form or express any opinion about the case until it is finally given to you
 to decide. Do not do any research or investigation on your own about any matter
 regarding this case or anyone involved with the trial. Do not communicate with
 others about the case by any means. Do not read, view, or listen to any newspaper
 or radio or electronic communications from the internet or television reports of the
 trial.

 7
 Once the parties began the evidentiary portion of trial, the court again admonished the

jurors with the same reminder before each recess, in addition to a request that they leave their

notebooks in their chairs. The court assured the jurors that nobody would look at the notebooks,

but the jurors could not take them because “we don't want you referring to them and deliberating

and discussing things that might be contained in your notes.”

 After both parties presented their case-in-chief, the court took an overnight recess. The

next morning on the final day of trial, the court noted that it “had a realization that it had failed to

read certain instructions to the jury after the jury was sworn, specifically, 302.01 and 302.02.”

No mention was made of 300.06. After the opportunity to research the issue, the parties both

agreed to allow the court to read the instructions to the jurors after the conclusion of the evidence

and both parties had rested their case. Trial Counsel specifically agreed to the court’s procedure

to assess and determine whether the jurors could follow the instructions. The trial court held that

Movant waived any rights or objections with regard to the court reading these instructions to the

jurors at the time. Accordingly, the court read the instructions, MAI-CR3d 302.01 and 302.02,

then brought each juror into the room individually, assured them they were in no trouble

regardless of their answers, and asked them under oath if the juror had followed the instructions,

paragraph by paragraph. Each juror stated that they had been able to follow the instructions

throughout the course of the trial.

 The jury found Movant guilty of one count of child molestation in the first degree, as

charged. The court sentenced him to ten years of imprisonment in the Missouri Department of

Corrections. Movant filed a motion for new trial on March 28, 2017, before Trial Counsel had a

transcript, alleging the trial court erred when it failed to read MAI-CR4th Jury Instruction

 8
400.04, 400.06, and 402.01. 4 Both Trial Counsel and Movant’s motion counsel inadvertently

misidentified these instructions because the trial court elected to use MAI-CR3d 302.01 and

302.02 instead of the MAI-CR4th edition instructions as set forth in Movant’s motions and brief.

However, MAI-CR3d 302.01 is identical to MAI-CR4th 402.01, and Movant concedes that

neither MAI-CR4th 400.04 nor 400.06 equates to the omitted MAI-CR3d 302.02; therefore he

advances his argument under 402.01. 5 For ease of analysis, we focus our discussion on the

identical instruction in MAI-CR3d 302.01 as used by the trial court. Movant’s motion for new

trial also alleged the court erred in allowing both Karase’s testimony and the prosecutor’s

argument regarding the search for a criminal attorney on his phone because the evidence and

argument violated Movant’s right to counsel and to privileged communications with his attorney.

The motion was denied.

 Movant filed a pro se motion to vacate, set aside or correct his judgment or sentence

prematurely on July 18, 2017. He was appointed counsel, who then requested and received an

additional thirty days to file an amended motion to vacate, set aside or correct (Amended

Motion). The Amended Motion was filed out of time on April 12, 2019. Counsel filed a motion

asking the motion court to consider the Amended Motion as timely filed due to abandonment by

counsel. The motion court conducted an abandonment inquiry that included the filing of

Movant’s deposition. The court found counsel had abandoned Movant and permitted the late

filing of the Amended Motion.

4
 The Missouri Supreme Court’s Order enacting MAI-CR4th specifically provided that “[t]he instructions, forms,
and Notes on Use for MAI-CR4th . . . must be used and followed on and after July 1, 2017, and may be used and
followed prior thereto, and any such use shall not be presumed to be error.” Order dated December 28, 2016, re:
MACH-CR 2d and MAI-CR4th. Whereas the trial occurred prior to July 1, 2017, the Notes on Use were suggested,
not required.
5
 Movant further acknowledges that neither the court nor Trial Counsel mentioned MAI-CR3d 300.06 and does not
raise the instruction in his appeal.

 9
 Movant’s Amended Motion raised two relevant claims: that Trial Counsel was

ineffective for failing to object and/or request a mistrial when (1) the trial court failed to read

mandatory jury instructions immediately after the jury was sworn; and (2) the State argued that

Movant’s attempt to contact an attorney demonstrated consciousness of guilt.

 The motion court denied Movant’s claims in a March 9, 2020 judgment, entered without

an evidentiary hearing. It concluded, first, the Trial Counsel’s decision not to request a mistrial

but to allow the court to follow the procedure it did was “reasonable trial strategy” and “in no

way prejudiced Movant.” The motion court explained that all the jurors clearly expressed that

they could follow the instructions and none indicated they needed anything further after hearing

the instructions. The court held, therefore, “the result of the proceeding would not have been

different had a mistrial been granted,” his right to a fair and impartial jury was never

compromised, and a new trial with a new jury would not have made a difference in the outcome.

 On Movant’s second claim, the motion court concluded that Trial Counsel was not

ineffective, nor was Movant prejudiced. The motion court found that evidence of Movant’s

search for a criminal defense attorney was “not evidence of other crimes (as argued in the

Amended Motion); as there were no other crimes.” Further, the motion court stated the search

done contemporaneously with being confronted by Victim’s father was “in fact consciousness of

guilt.”

 Movant filed a timely Notice of Appeal on April 20, 2020. This appeal follows.

 DISCUSSION

 Movant raises two points on appeal, both alleging the motion court erred in denying his

Rule 29.15 motion for post-conviction relief without an evidentiary hearing, because Trial

Counsel failed to object or seek a mistrial when the trial court failed to read required instructions

 10
at the proper time and when the State argued Movant’s search for an attorney constituted proof

of consciousness of guilt. Movant alleges the motion court’s errors were in violation of his right

to effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments

to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri

Constitution.

 Standard of Review

 When reviewing a motion court’s judgment on a motion for post-conviction relief, the

motion court’s findings are presumed correct. Shockley v. State, 579 S.W.3d 881, 892 (Mo. banc

2019). A motion court’s judgment will be overturned only when its findings of fact or

conclusions of law are clearly erroneous. Rule 29.15(k). A motion court’s findings are clearly

erroneous if, after reviewing the entire record, this Court is left with the definite and firm

impression that a mistake has been made. Shockley, 579 S.W.3d at 892. The appellate court

defers to the motion court’s superior opportunity to judge the credibility of witnesses. Id. The

motion court’s findings should be upheld if they are sustainable on any grounds. Swallow v.

State, 398 S.W.3d 1, 3 (Mo. banc 2013).

 A movant is not entitled to an evidentiary hearing unless (1) he pleads facts, not

conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the record; and

(3) the matters complained of resulted in prejudice to the movant. Johnson v. State, 406 S.W.3d

892, 898 (Mo. banc 2013).

 A movant must show by a preponderance of the evidence that his or her trial counsel

failed to meet the Strickland test, demonstrating that (1) counsel failed to exercise the level of

skill and diligence that a reasonably competent attorney would in a similar situation, and (2) the

movant was prejudiced by that failure. Shockley, 579 S.W.3d at 892 (citing Strickland v.

 11
Washington, 466 U.S. 668, 687 (1984)). To satisfy Strickland, a movant must overcome the

strong presumption that trial counsel’s conduct was reasonable and effective. Id. The

presumption is overcome if the movant identifies specific acts or omissions of counsel that, in

light of all the circumstances, fell outside the wide range of professional assistance. Id. Trial

strategy decisions may serve as a basis for finding ineffective assistance of counsel only if that

decision was unreasonable. Id. Strategic choices made after a thorough investigation of the law

and facts relevant to plausible options are virtually unchallengeable. Id. Missouri courts have

“never found that a failure to litigate a trial perfectly constitutes ineffective assistance of counsel,

nor does this Court believe a ‘perfect’ litigation to be possible.” Strong v. State, 263 S.W.3d

636, 650 n.7 (Mo. banc 2008).

 To establish the prejudice prong of Strickland, a movant must prove that there is a

reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding

would have been different. Shockley, 579 S.W.3d at 892. A reasonable probability exists when

there is a probability sufficient to undermine confidence in the outcome. Tisius v. State, 519

S.W.3d 413, 420 (Mo. banc 2017).

 Point I

 In his first point on appeal, Movant alleges the motion court erred in denying his Rule

29.15 post-conviction relief motion without an evidentiary hearing because Movant alleged facts

showing that Trial Counsel was ineffective for failing to object or seek a mistrial where the trial

court erred by failing to read MAI-CR3d 302.01 until the conclusion of the evidence at trial.

Movant contends the MAI Jury Instruction Notes on Use clearly require these preliminary

instructions to be read immediately upon the jury’s being sworn and clearly instruct that such

instructions not be numbered or given to the jury when it retires to deliberate. He argues the trial

 12
court’s procedure of bringing in each individual juror after the close of the evidence and out of

the hearing of the other jurors, and inquiring of each whether they had followed the preliminary

instructions, practically guaranteed a post hoc affirmation that the juror had, in fact, followed the

preliminary instruction. Movant argues but for Trial Counsel’s ineffectiveness in consenting to

this procedure, there is a reasonable probability that Movant would have been acquitted, or at

least, that the outcome of his trial would have been different.

 Analysis

 “Both prongs of the Strickland test ‘must be shown by a preponderance of the evidence in

order to prove ineffective assistance of counsel.’” Tisius, 519 S.W.3d at 420. If the movant fails

to prove one prong, his or her claim necessarily fails, and it is unnecessary to analyze the

additional prong. Esters v. State, 554 S.W.3d 918, 924 (Mo. App. E.D. 2018) (citing King v.

State, 505 S.W.3d 419, 424 (Mo. App. E.D. 2016)). If a reviewing court can dispose of a claim

of ineffective assistance of counsel because of a lack of sufficient prejudice, then that course

should be followed.” Id. (quoting Taylor v. State, 382 S.W.3d 78, 81 (Mo. banc 2012)).

 Movant argues the State made “no showing making it perfectly clear that no prejudice

could have resulted from trial counsel’s failure to insure that the jurors were instructed before

any evidence came in on how to consider and weigh the credibility of witnesses, among other

things.” However, Woods v. State clarifies that Movant, not the State, has the burden in this

post-conviction relief case. 458 S.W.3d 352, 365 n.13 (Mo. App. W.D. 2014). The presumption

of prejudice arises on direct appeal from a conviction and places the burden on the State to rebut

the presumption. Id. But in a post-conviction case such as this, the burden of proving prejudice

is shifted to the movant, and is satisfied by the movant proving prejudice by a preponderance of

 13
the evidence. Id. That burden is not satisfied by a presumption. Id. Movant did not meet that

burden here.

 Instructive to our analysis here are State v. Barton, 670 S.W.2d 162, 164 (Mo. App. S.D.

1984), and State v. Robinson, 484 S.W.3d 862, 867 (Mo. App. E.D. 2016). Although Barton was

a direct appeal from the defendants’ convictions, the defendants argued the trial court erred by

omitting portions of the mandatory instruction MAI-CR2d 1.02, which informed the jurors that a

charge is not evidence and does not create an inference that a crime was committed, the

defendant is presumed to be innocent, and a verdict of not guilty must be returned if there is a

reasonable doubt. Id. The court held the error was not prejudicial because the entire omitted

portion of the instruction was read to the jury before deliberation. Id. at 165 (citing State v.

Holt, 592 S.W.2d 759, 776 (Mo. banc 1980); State v. Wilfong, 438 S.W.2d 265, 266 (Mo. 1969)).

The instruction was also among those taken to the jury room for use during deliberations and was

available for the defense attorney to use during closing argument. Id.

 In Robinson, the trial court failed to read preliminary instructions, MAI-CR3d 300.06,

302.01, 302.02, and, without objection, the State immediately made its opening statement. 484

S.W.3d at 867. The trial court denied motions for judgment of acquittal at the close of all the

evidence and a brief record regarding the instructions was made. Id. This Court weighed the

“intertwined allegations of error together” regarding the failure to read all three missing

instructions, and declined to consider whether failure to read one “would hypothetically

constitute plain error.” Id. at 874. Finding plain error because the jury did not receive

“sufficient guidance,” this Court criticized the trial court and specifically suggested:

 Rather than performing an individual voir dire of the jury panel, the trial court
 expressed its intent to change the instructions’ language to past tense and inquire
 whether the jury had comported with the directives.

 14
Id. at 867, 875. Although the trial court questioned the jurors about conduct forbidden by MAI-

CR3d 302.01 and no juror responded affirmatively, it made no inquiries regarding MAI-CR3d

302.02’s directives and did not give MAI-CR3d 300.06 in any form. Id. at 867.

 We distinguish Movant’s case here from the plain error found on direct appeal in

Robinson for the intertwined allegations regarding the omission of the three instructions, and the

tense changes and voir dire of jurors in reaction to the initial omission. Here, rather, Movant’s

claim is limited to the failure to timely read only MAI-CR3d 302.01, which outlined the

“established rules” by which the jurors were to consider statements, rulings or remarks of the

judge, how to determine the believability of a witness and the weight to be given to testimony of

the witness, including any interest the witness may have, the importance of deciding the case

based only upon the evidence presented in the proceedings in the courtroom, and that the jurors’

performance of their duties is vital to the administration of justice. MAI-CR3d 302.01.

 Mindful of the lesson to be learned from the plain error in Robinson, the trial court

allowed the parties to research the issue overnight. Both parties specifically agreed to the court

reading the instructions to the jury at the close of the evidence when both parties rested their

cases and then to individually voir dire each juror. Trial Counsel agreed to this procedure.

Moreover, the record refutes Movant’s post-conviction claim as the trial court noted that Movant

waived any rights or objections with regard to the court reading these instructions to the jurors at

the time. Additionally, the record refutes Movant’s claim that this prejudiced him in that the

individual jurors responded under oath that they had followed the instructions, MAI-CR3d

302.01 and 302.02, throughout the course of the trial.

 Like in Barton, the instructions here were read to the jury before closing arguments and

were available to the defense to argue and use during closing arguments. Movant cannot

 15
establish prejudice simply by arguing a presumption that he was prejudiced by Trial Counsel’s

agreement to the trial court reading the omitted instructions and voir diring the jurors

individually about it, or failure to request a mistrial. Moreover, Movant’s claim is refuted by

each juror’s response during the court’s questioning that they had been able to follow the

instructions throughout the course of the trial. Movant has failed to demonstrate a reasonable

probability that a request for a mistrial would have been granted or that the result of trial would

have been different had the instruction been timely read.

 Furthermore, Movant cannot meet the performance prong of the Strickland test

demonstrating that counsel failed to exercise the level of skill and diligence that a reasonably

competent counsel would in a similar situation. Cognizant of the plain error meriting reversal in

Robinson, the parties researched and agreed upon their method of rectifying the omission of a

jury instruction. Movant has not demonstrated Trial Counsel’s decision was incompetent or

unreasonable, or that it was anything but reasonable trial strategy for Trial Counsel to work with

the trial court and the State to ensure the jurors understood their roles and followed the

instructions provided without wasting judicial resources by requiring Movant to start over with a

new trial.

 Movant has failed to plead facts, rather than conclusions, warranting relief; Movant’s

allegations are refuted by the record; and Movant’s complaints have not demonstrated prejudice.

See Johnson, 406 S.W.3d at 898. The motion court did not err in denying Movant’s motion for

post-conviction relief without an evidentiary hearing. Point I is denied.

 Point II

 In his second point, Movant alleges the motion court clearly erred in denying his Rule

29.15 motion for post-conviction relief without an evidentiary hearing because Movant alleged

 16
facts showing Trial Counsel was ineffective for failing to object or seek a mistrial when the State

adduced evidence that a forensic examination of Movant’s cell phone showed that he had

searched for an attorney, and then argued that search constituted proof of consciousness of guilt.

Movant alleges that but for Trial Counsel’s ineffectiveness in failing to object to this evidence,

there is a reasonable probability that Movant would have been acquitted or at least that the

outcome of his trial would have been different. The State argues that Movant’s characterization

of this search as his invocation of his right to counsel, which should not have been used to

impeach his testimony, is inconsistent with Movant’s evidence that the Google search was

motivated by Father’s threats and Movant’s good reason to fear that Father would act on those

threats, and that the purpose of the search was to determine what steps Movant could take to

protect himself.

 Analysis

 As an initial matter, we find Movant’s argument on appeal differs significantly from his

original point relied on such that it is not preserved under Rule 84.04. Arguments raised in the

point relied on portion of an appellate brief that are not supported in the argument portion of the

brief are deemed abandoned and preserve nothing for appellate review. State v. Nunley, 341

S.W.3d 611, 623 (Mo. banc 2011). The point relied on must be restated in the argument portion

of the brief, at the beginning of the section of the argument discussing that point. Rule 84.04(e).

Movant argues only Trial Counsel’s failure to object to the prosecutor’s argument in his restated

point, omitting his initial reference to Trial Counsel’s failure to object to the introduction of

evidence of Karase’s forensic examination. Moreover, Movant’s argument portion discusses

only the admissibility of the challenged evidence and Trial Counsel’s failure to object to it,

without mentioning the prosecutor’s closing argument and failure to object to that. Even though

 17
Movant’s brief is technically deficient, dismissal for failure to comply with Rule 84.04 is

discretionary. Cook v. State, 193 S.W.3d 378, 383 (Mo. App. S.D. 2006). “That discretion is

generally not exercised unless the deficiency impedes disposition on the merits. ‘A brief

impedes disposition on the merits where it is so deficient that it fails to give notice to [the court]

and to the other parties as to the issue presented on appeal.’” Keeney v. Mo. Highway & Transp.

Comm'n, 70 S.W.3d 597, 598 n.1 (Mo. App. S.D. 2002) (quoting Wilkerson v. Prelutsky, 943

S.W.2d 643, 647 (Mo. banc 1997)). Because Movant’s point provides sufficient notice to the

parties and this Court as to the issue presented on appeal, we will review the merits. Cook, 193

S.W.3d at 383.

 Trial Counsel attempted to suppress the evidence from Movant’s cell phone, including

his search for an attorney, but the trial court permitted the evidence because it was relevant and

admissible information after the State argued it showed a consciousness of guilt. “[D]efense

counsel cannot be said to have fallen short of this standard [providing constitutionally effective

assistance of counsel] when they made the only objection [the movant] asserts they should have

made.” Hosier v. State, 593 S.W.3d 75, 93 (Mo. banc 2019). Trial Counsel renewed the motion

to suppress later during the Karase’s testimony about conducting the forensic examination of the

phone, and thus, cannot be ineffective for failing to object to the evidence that a forensic

examination of Movant’s cell phone showed that he had searched for an attorney. Moreover,

post-conviction relief is not the proper avenue for a related argument that the trial court erred in

denying his motion to suppress the evidence.

 Furthermore, Movant’s claim fails because upon consideration of the record as a whole,

as set forth in the “Background” section herein, Trial Counsel employed a reasonable trial

strategy to show the forensic cell phone evidence in a light favorable to Movant. See State v.

 18
Young, 844 S.W.2d 541, 548 (Mo. App. E.D. 1992). After the trial court admitted the cell phone

evidence, Trial Counsel attempted to make the best of the situation. Trial Counsel presented

testimony and argument that Movant’s search for an attorney was motivated by Father’s threats

and Movant’s reason to fear that Father would act on those threats and kill him. Trial Counsel

attempted to demonstrate the purpose of the Google search was to determine what Movant would

do to protect himself from Father, including possibly obtaining a restraining order. Movant

cannot show that his Trial Counsel’s attempt to turn this cell phone evidence into favorable

evidence was anything but reasonable trial strategy.

 Movant has failed to plead facts, rather than conclusions, warranting relief; Movant’s

allegations are refuted by the record; and Movant’s complaints have not demonstrated prejudice.

See Johnson, 406 S.W.3d at 898. The motion court did not clearly err in denying Movant’s Rule

29.15 motion without an evidentiary hearing. Point II is denied.

 CONCLUSION

 The judgment of the motion court is affirmed.

 __________________________________
 Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and Robin Ransom, S.J., concur.

 19